**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2012

No. 10-60892

Lyle W. Cayce
Clerk

ITL INTERNATIONAL, INCORPORATED, doing business as Mars Caribbean and Central America, doing business as Master Foods Interamerica; MARS INCORPORATED,

Plaintiffs – Appellants

v.

CONSTENLA, S.A.; GRUPO CONSTENLA, S.A.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

ITL International, formerly known as Master Foods Interamerica ("MFI"), and its parent company Mars, Inc. filed this declaratory judgment action in federal district court in Mississippi, seeking relief against their longtime Costa Rican distributor. The district court dismissed the complaint for lack of personal jurisdiction over the defendants. Failing to find specific jurisdiction under the Due Process Clause, we affirm.

I.

This appeal arises from a declaratory judgment action filed by Mars,

Inc.—the manufacturer of M&M's and other candy—and its subsidiary ITL International, formerly known as Master Foods Interamerica ("MFI"), against their Costa Rican distributor and its parent company.

In May 1992, MFI entered into an exclusive distribution agreement with a Costa Rican company known as Ciamesa, which was later acquired by defendant Constenla, a subsidiary of defendant Grupo Constenla. The agreement provided that Ciamesa would develop the Costa Rican market and promote the sales of Mars products in Costa Rica. The agreement further provided that "[t]his Agreement is personal to CIAMESA and it may not be assigned or transferred, either apart from or as a part of CIAMESA's business, to any other party without [MFI's] prior written approval." The agreement did not include a choice-of-law provision, but the parties agree that the agreement was made in Costa Rica and is governed by Costa Rican law.

Plaintiffs contend that the agreement terminated when Ciamesa was acquired by defendants in 1996; defendants maintain that they acquired the distribution rights as part of the merger. Regardless, the parties continued to abide by the distribution agreement for many years afterward, until Mars recently decided to sell some of its products directly to Costa Rican retailers. The record reflects that since January 2009, plaintiffs have delivered 91 shipments of goods to defendants for distribution in Costa Rica. On 55 of these occasions, plaintiffs shipped the goods to defendants "FOB/Gulfport, Mississippi." The defendants requested to take possession and title to the goods in Gulfport,[1] although they insist that their decision was effectively dictated by Mars's quality control policies.

---

[1] There is some dispute whether Gulfport was the site where the parties transferred *possession* or merely *risk of loss*. The standard of review requires us to draw all inferences in favor of the plaintiffs, and in any event, the facts indicate an actual exchange of possession from the plaintiffs' shipper to the defendants' shipper in Gulfport.

No. 10-60892

When plaintiffs notified defendants that they wished to revise or terminate the exclusive distribution agreement, defendants claimed that Costa Rica Law 6209 requires a termination penalty of more than $7 million.[2] Defendants argue that the termination penalty applies regardless of their actual damages from breach and despite the contract's express provision that either party may terminate the agreement by giving three-months' written notice.

Plaintiffs subsequently filed this declaratory judgment action in federal district court in Mississippi, seeking declarations (1) that the distribution agreement does not restrict Mars from making other distribution arrangements in Costa Rica, either because the agreement terminated when Constenla acquired Ciamesa or because the plaintiffs validly terminated it; (2) that, if the agreement applies to Constenla, then defendants breached the agreement by demanding a severance payment under Law 6209, entitling plaintiffs to damages and a permanent injunction preventing defendants from claiming that they are the plaintiffs' exclusive Costa Rican distributor; (3) that plaintiffs are not liable to defendants for any reason and that defendants must pay any unpaid amounts; (4) that defendants no longer have license to use Mars's trademarks; and (5) that any interference with plaintiffs' contracts with other trademark licensees and Costa Rican importers or distributors constitutes tortious interference. Plaintiffs further allege that any termination penalty unrelated to actual damages violates the fundamental public policy of Mississippi and cannot be enforced. They have requested an international anti-suit injunction to prevent defendants from seeking a judgment against them in the Costa Rican courts.

The district court dismissed the complaint for lack of personal jurisdiction

---

[2] Law 6209 was repealed in 2007, but defendants assert that it continues to apply to contracts signed before the repeal.

3

over the defendants.[3]  The court first found that the defendants were amenable to suit under the contract prong of the Mississippi long-arm statute[4] and that they had minimum contacts with Mississippi.[5]  Nevertheless, the district court concluded that "this case is one of the rare instances when exercising jurisdiction would be unreasonable despite the presence of minimum contacts."[6]  The court noted that the underlying claims are governed by Costa Rican law and that most of the witnesses and evidence are located in Costa Rica.[7]  Plaintiffs are both Delaware corporations with principal places of business in Virginia; neither has offices in Mississippi, and MFI was not registered to do business in Mississippi until after it filed suit.  In the district court's view, the plaintiffs "appear to have chosen Mississippi because it is the state in which the Defendants have the greatest contacts."[8]  The court also explained that Costa Rica would be a preferable forum based in part on expert testimony that Costa Rican courts would not enforce a U.S. court judgment applying Costa Rican law against a Costa Rican defendant, "rais[ing] the possibility that this Court's orders would be for nothing"[9] and that allowing suit to proceed in the United States would interfere with Costa Rica's sovereignty and social policy.[10]

Plaintiffs now appeal, arguing that the defendants' purposeful contacts

---

[3] *ITL Int'l, Inc. v. Constenla, S.A.*, No. 1:10CV567, 2010 WL 4537931 (S.D. Miss. Nov. 2, 2010).  The court did not reach defendants' alternative arguments for dismissal based on ineffective service of process and *forum non conveniens*.  *Id.* at *2 & n.2.

[4] *Id.* at *4.

[5] *Id.* at *5–6.

[6] *Id.* at *10.

[7] *Id.* at *8–9.

[8] *Id.* at *8.

[9] *Id.*

[10] *Id.* at *9.

No. 10-60892

with Mississippi render jurisdiction there fair and reasonable. Defendants argue that allowing suit in Mississippi would violate traditional notions of fair play and substantial justice; they also argue, as alternative grounds for affirmance, that there was no basis for personal jurisdiction under the Mississippi long-arm statute and that they had insufficient contacts with the state for personal jurisdiction there to be consistent with constitutional due process.

## II.

This Court reviews a district court's dismissal for lack of personal jurisdiction *de novo*.[11] At this preliminary stage, the plaintiff need only make a *prima facie* showing of jurisdiction.[12] When the district court rules on the motion to dismiss before holding an evidentiary hearing, the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff.[13]

## III.

Our analysis proceeds in two parts.[14] We first examine whether the defendants are amenable to suit under the Mississippi long-arm statute. We hold that they are amenable under the statute's "doing business" prong. Next we examine whether personal jurisdiction over this dispute comports with the Due Process Clause of the Fourteenth Amendment. We hold that it does not, for we find the nexus between the defendants' contacts in Mississippi and the nature of the dispute inadequate to support specific jurisdiction.

*A. The Mississippi Long-Arm Statute*

---

[11] *See McFadin v. Gerber*, 587 F.3d 753, 758 (5th Cir. 2009).

[12] *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

[13] *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000).

[14] *See McFadin*, 587 F.3d at 759. As we noted in *Stripling*, we address each part separately because Mississippi's long-arm statute is not coextensive with due process. 234 F.3d at 869 n.7.

No. 10-60892

Federal Rule of Civil Procedure 4(k)(1)(A) provides personal jurisdiction over any defendant who would be subject to personal jurisdiction under the long-arm statute of the state in which the district court sits. The Mississippi long-arm statute authorizes jurisdiction over

> [a]ny nonresident . . . who shall [1] make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall [2] commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall [3] do any business or perform any character of work or service in this state.[15]

The three prongs of the long-arm statute are commonly referred to as the contract prong, the tort prong, and the doing-business prong. Plaintiffs argue that jurisdiction exists under both the contract prong and the doing-business prong. The district court found jurisdiction under the contract prong without ruling on the doing-business prong. We likewise find jurisdiction under the long-arm statute, but our conclusion rests on the doing-business prong rather than the contract prong. We affirm the district court's conclusion on this alternative ground.[16]

As a preliminary matter, we must address the defendants' argument that plaintiffs may not avail themselves of the long-arm statute because, when MFI first filed suit, it was not registered to do business in Mississippi and thus not a Mississippi resident. The argument fails for two reasons. First, the first amended complaint added Mars, Inc. as a plaintiff, and Mars has been registered to do business in Mississippi since 2003. Second, Mississippi's door-closing statute contemplates that a plaintiff corporation that is not a resident

---

[15] MISS. CODE § 13-3-57.

[16] *See Phillips v. Monroe Cnty., Miss.*, 311 F.3d 369, 376 (5th Cir. 2002) ("We 'may affirm [the district court's decision] on any grounds supported by the record.'" (alteration in original) (quoting *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000)).

No. 10-60892

upon commencing suit may cure that defect by subsequently obtaining a certificate of authority to do business in the state, making it a state resident.[17] The statute clarifies that MFI's nonresident status when it commenced suit is a curable defect, and because MFI has now cured it by registering as a Mississippi resident, there is no bar to the plaintiffs' use of the Mississippi long-arm statute to assert personal jurisdiction over the defendants.

The statute allows jurisdiction over a nonresident defendant who is "doing business" in the state. While this has been the plaintiffs' principal jurisdictional argument throughout this litigation, the district court suggested that they might have trouble establishing jurisdiction under this prong.[18] But the district court looked to an outdated test that does not pertain to the current version of Mississippi's long-arm statute. Prior to 1991, Mississippi courts applied a three-part test,[19] which the district court relied on here. But following a 1991 amendment to the statute, the Supreme Court of Mississippi no longer applies that test. That court has said, "As it stands now, the long-arm statute, by its plain terms, applies to any person or corporation performing *any character of work* in this state."[20] That broad scope encompasses the defendants' activities here. By using Mississippi's ports to take possession and title of shipments of goods, defendants performed some "character of work" within the state.[21] Thus, under current Mississippi law, the doing-business prong establishes long-arm

---

[17] The door-closing statute, enacted in 1988, provides that "[a] court may stay a proceeding commenced by a foreign corporation . . . until the foreign corporation . . . obtains the certificate [of authority]." MISS. CODE § 79-4-15.02(c).

[18] *ITL*, 2010 WL 4537931, at *4.

[19] *See Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877–78 (Miss. 1995).

[20] *See Estate of Jones v. Phillips*, 992 So. 2d 1131, 1139 (Miss. 2008) (emphasis added).

[21] *See ITL*, 2010 WL 4537931, at *3 (recognizing "55 specific instances of receiving possession and title to Plaintiffs' goods at the Port of Gulfport, Mississippi for shipment and sale in Costa Rica").

No. 10-60892

jurisdiction over the defendants in this case.[22]

### B. Specific Jurisdiction Under the Due Process Clause

We must further consider whether adjudicating the plaintiffs' claims in a Mississippi forum is consistent with the Due Process Clause of the Fourteenth Amendment. The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful "contacts, ties, or relations."[23] Jurisdiction may be general or specific.[24] Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable.[25]

Due process first requires that a defendant have sufficient contacts with the forum state such that it "should reasonably anticipate being haled into court there."[26] This requirement can be satisfied by a showing that the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there."[27] The defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral

---

[22] We do not address whether the contract prong is satisfied, and we need not address the plaintiffs' argument in the alternative that Federal Rule of Civil Procedure 4(k)(2) would establish personal jurisdiction over the defendants if the long-arm statute does not.

[23] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).

[24] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).

[25] *See, McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

[26] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

[27] *Nuovo Pignone*, 310 F.3d at 378.

activity of another party or third person."[28]  Unlike general jurisdiction, which requires that the defendant's purposeful contacts with the forum state be "continuous and systematic," specific jurisdiction may exist where there are only isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those contacts.[29]

Plaintiffs contend that the defendants had sufficient minimum contacts with Mississippi because they took possession and title of plaintiffs' goods in Gulfport on 55 occasions since January 2009, with the 55 shipments worth a total value of $3.3 million.  Plaintiffs further allege, and the district court found, that defendants "affirmatively specif[ied] the Gulfport port" as the location where they wished to take delivery of the goods.[30]  Defendants do not deny that they were the ones who selected Gulfport as the delivery site, but they argue that this decision was dictated in large part by factors outside their control, including the economics of shipping goods to Central America and the need for special refrigerated containers and warehouses.

Like the district court, we find that these 55 shipments were purposeful contacts with Mississippi.  First, the standard of review dictates that we resolve all factual disputes in favor of the plaintiffs, and viewed in this light the facts are sufficient to establish a *prima facie* case of jurisdiction.  Second, defendants' claim that they had no meaningful choice over what port to use is belied by the fact that, during this same time period, defendants took possession of 36 other shipments of plaintiffs' goods at ports *other* than Gulfport, including 11 in Miami.  Third, even if defendants' choice of receiving port was effectively

---

[28] *Burger King*, 471 U.S. at 475 (internal quotation marks and citations omitted); *accord McFadin*, 587 F.3d at 759.

[29] *See Luv N' Care*, 438 F.3d at 469; *Nuovo Pignone*, 310 F.3d at 379; *see also Burger King*, 462 U.S. at 475 n.18.

[30] *ITL*, 2010 WL 4537931, at *5.

dictated by economic and logistical considerations, the fact that they knowingly designated Gulfport as the transfer point was enough that they should have reasonably anticipated being haled into court in Mississippi.[31]  Finally, this is not a case in which an F.O.B. term is a legal formalism unconnected with any actual forum activity.[32]  Rather, physical possession as well as title transferred to the defendants in Gulfport.  By partially performing the contract in Mississippi, defendants have availed themselves of Mississippi's laws, logistics, transportation, and business facilities, including the port of Gulfport.[33]

Defendants argue that much of the relevant activity—perhaps the vast majority of it—had no connection to Mississippi.  But the relevant inquiry for purposes of this prong is not one of *relative* contacts, but only whether the defendants had sufficient *minimum* contacts with the state.[34]  The defendants' purposeful direction that possession and title to the goods be transferred to them in Gulfport is sufficient for them to have reasonably anticipated being haled into court in Mississippi.  We conclude that there has been a sufficient showing of minimum contacts to support specific jurisdiction over the defendants in Mississippi.

But in addition to minimum contacts, specific jurisdiction only obtains when a plaintiff's claims "arise out of or relate to" the defendant's purposeful

---

[31] *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268–71 (11th Cir. 2010).

[32] *See id.* at 1272–73; *cf. Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188–89 (5th Cir. 1978) (holding that F.O.B. shipment, without more, is not purposeful availment of the laws of the forum state).

[33] *See Luv N' Care*, 438 F.3d at 471–72 (concluding that an "F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper").

[34] *See Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886, 892–93 (1st Cir. 1977).

No. 10-60892

contacts with the forum.[35] Or, as we have put it, "'the plaintiff's cause of action [must] arise[] out of or result[] from the defendant's forum-related contacts.'"[36] This is what we find lacking. There is little nexus between the defendants' contacts with Mississippi and the plaintiffs' contract and trademark claims.

Although the contract was partially performed in Mississippi, the dispute here does not arise out of or result from that partial performance.[37] This dispute concerns only trademark claims and general contract issues—transfer, assignment, application, liability, termination, interpretation—that have, at most, a superficial and highly attenuated connection to the minimal activity that took place in Mississippi. In fact, this lawsuit is oriented almost exclusively toward activity that has taken place or may eventually take place in Costa Rica, and nothing in the facts, claims, causes of action, or prayer sections of the complaint makes reference to Mississippi or to activity that took place there. This case is not about damaged goods delivered in Gulfport but rather about distribution in Costa Rica and associated contract and trademark issues. The contract claims present rather abstract questions of law that have no relation to passing the goods from plaintiffs to defendants in Gulfport. Indeed, plaintiffs allege no injury flowing from the transport of the goods,[38] and neither party to the contract was a Mississippi resident when the contract was made or

---

[35] *Burger King*, 471 U.S. at 472 & n.15 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.9 (1984)); *see also Goodyear*, 131 S. Ct. at 2853.

[36] *Luv N' Care*, 438 F.3d at 469 (quoting *Nuovo Pignone*, 310 F.3d at 378).

[37] *Cf. Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (dismissing a defective design claim for lack of personal jurisdiction where contacts were present but where they did not give rise to the claim); *Nuovo Pignone*, 310 F.3d at 381–82 (concluding that claims *about the performance* of a contract "necessarily arise out of" forum contacts established by that contract).

[38] *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993) (denying jurisdiction because there was a "highly attenuated" relationship between the defendant's contact with the forum state and plaintiff's declaratory judgment action for copyright infringement, which "allege[d] no injury flowing from" the contact).

performed.[39]  The trademark claim is even more remote from the Mississippi activity.[40]  Whether the defendants took possession of the goods in Mississippi, Florida, or some other state makes no difference to the claims in this lawsuit. Partial performance in a state, without more, does not provide an adequate nexus with claims that do not arise out of or result from that performance.

In sum, even if the defendants could reasonably anticipate being haled into Mississippi federal court, they could not reasonably anticipate being so haled to answer claims such as these.  Seeing no constitutionally adequate nexus between the plaintiffs' claims and the defendants' Mississippi contacts, we conclude that the plaintiffs have failed to present a *prima facie* case that a Mississippi district court may exercise specific jurisdiction over the defendants.[41]

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal for lack of jurisdiction and DENY as moot the motion for an international anti-suit injunction.

---

[39] MFI registered to do business in Mississippi only after commencing suit.  Mars, Inc., the other plaintiff and a Mississippi resident since 2003, was not a party to the contract and is involved in the case instead as the owner of the relevant trademarks.

[40] *Cf. J. Stephen Scherer, Inc. v. Revelations Antoine Ltee*, 845 F.2d 1033 (Fed. Cir. 1988) (unpublished table decision).

[41] Finding the second prong of the due process inquiry unsatisfied, we do not reach the "fair and reasonable" prong.  It was on the third prong that the district court found jurisdiction lacking, but we again affirm its conclusion on an alternative ground.  *See supra* note 16 and accompanying text.