# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 13, 2013

Lyle W. Cayce
Clerk

No. 11-60767

ANDREA IRVIN,

Plaintiff–Appellant

v.

SOUTHERN SNOW MANUFACTURING, INCORPORATED,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
U.S.D.C. No. 5:10-CV-196

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:[*]

Andrea Irvin appeals the district court's dismissal of her case for want of personal jurisdiction over Southern Snow Manufacturing, Inc., ("Southern Snow"). We AFFIRM.

Louisiana-based Southern Snow manufactures shaved-ice machines used to create "snowballs." It sells those machines and the accessories necessary to make snowballs—such as flavored syrup, syrup bottles, bottle nozzles, disposable cups, and plastic spoons—to customers residing in all states in the United

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60767

States, as well as internationally. Mississippi has, in some years, been the third largest market for Southern Snow products.

Southern Snow sold a snowball machine to a Louisiana resident who bought, paid for, and took possession of the machine in Louisiana. Several years later, the purchaser sold the machine in Louisiana to Irvin and her husband, both Mississippi residents, and the Irvins took it to Mississippi. Irvin later purchased $369.20 worth of snowball accessories directly from Southern Snow. No evidence suggests that these accessories are unique to Southern Snow's snowball machines.

Irvin subsequently injured her hand while attempting to clean the machine. She sued Southern Snow in Mississippi state court, asserting negligence, defective-design, and failure-to-warn claims. Southern Snow removed and filed a motion to dismiss for lack of personal jurisdiction. The district court conducted an evidentiary hearing and granted the motion. Irvin timely appealed.

This court reviews *de novo* as an issue of law whether a district court may properly exercise personal jurisdiction over a nonresident defendant. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Normally, a plaintiff need only make a *prima facie* showing of the defendant's amenability to suit. *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002). Where, as here, the district court conducts an evidentiary hearing, however, a plaintiff must demonstrate that the exercise of jurisdiction is appropriate by a preponderance of the evidence. *See DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n.12 (5th Cir. 1983). We review for clear error any factual findings material to the district court's ruling. *Loumar, Inc. v. Smith*, 698 F.2d 759, 763 (5th Cir. 1983).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum

2

state confers personal jurisdiction over that defendant; and (2) [the] exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution."[1]  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).  The inquiry generally turns on the facts of each case, but precedent provides some well-known principles as guidance.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485-86 (1985).  The longstanding "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State . . . 'such that he should reasonably anticipate being haled into court there.'"  *Id.* at 474 (citations omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).

There are two types of personal jurisdiction: general and specific.  *See, e.g.*, *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  Irvin suggests that the district court could have exercised general jurisdiction over Southern Snow.  She waived this argument by failing to raise it clearly and develop it adequately in her opening brief.[2]  *See, e.g.*, *Tharling v. City of Port Lavaca*, 329 F.3d 422, 430 (5th Cir. 2003).  This case therefore turns on specific jurisdiction.

---

[1] The Mississippi long-arm statute is not coextensive with due process.  *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 497 n.14 (5th Cir. 2012).  The district court concluded that Irvin satisfied that statute's "tort prong," which confers personal jurisdiction over nonresidents who "commit a tort in whole or in part in [Mississippi] against a resident or nonresident." Miss. Code Ann. § 13-3-57.  There is no real dispute that the tort prong applies here.  *See Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 879 (Miss. 1995) ("For purposes of the tort prong . . . , 'a tortious act outside the state which causes injury within the state confers jurisdiction on the courts of that state.'" (citation omitted)).

[2] In any case, the record does not suggest that Southern Snow's contacts with Mississippi are "so 'continuous and systematic' as to render [it] essentially at home" and amenable to suit there under a general jurisdiction theory. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citation omitted).

No. 11-60767

The exercise of specific jurisdiction requires establishing three elements. First, the plaintiff must show that the defendant has established minimum contacts with the forum state by purposely directing its activities toward the forum state or purposefully availing itself of the privilege of conducting activities there. *See Burger King*, 471 U.S. at 474-76. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (emphasis removed) (citation omitted).

Second, the plaintiff's claims must "relate[] to or 'arise[] out of' [the] defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In other words, there must be a "nexus between the defendant['s] contacts with Mississippi and the plaintiff['s] [tort] claim[]." *ITL International*, 669 F.3d at 500. Finally, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted); *see also Burger King*, 471 U.S. at 476-77.

Although the particular machine that injured Irvin arrived in Mississippi through the plaintiff's own unilateral acts, Irvin contends that Southern Snow's business contacts with other Mississippi customers are sufficient to support specific jurisdiction under a "stream-of-commerce" theory, citing *Petroleum Helicopters, Inc. v Avco Corp.*, 804 F.2d 1367 (5th Cir. 1986), and *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir. 1984). "The stream-of-commerce theory permits the exercise of personal jurisdiction over a nonresident defendant that 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'"

4

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006) (quoting *World-Wide Volkswagen*, 444 U.S. at 298). In Irvin's view, the fact that Southern Snow sold snowball machines directly to other Mississippi residents should reasonably have put it on notice that it could be "haled into court" in Mississippi for a lawsuit over a defective snowball machine.[3]

We need not decide the outer limits of the stream-of-commerce jurisdictional theory here. We assume without deciding that Irvin demonstrated that Southern Snow purposefully availed itself of the privilege of doing business in Mississippi by making a substantial percentage of its overall sales to customers in that state, satisfying the first element of specific jurisdiction. *See Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 373 (5th Cir. 2010) (reasoning that deriving revenue from a "sales or distribution network" designed to nationally market products "is the quid pro quo for requiring the defendant to suffer a suit in the foreign forum" (citations omitted)).

The second element proves more problematic, as Irvin fails to show that her claims "arose out of" or "relates to" Southern Snow's Mississippi contacts. As an initial matter, the nexus between those contacts and the machine that injured Irvin is too attenuated to support personal jurisdiction based on an "arose-out-of" theory. Southern Snow sold the machine to a Louisiana customer and had no knowledge that, years later, Irvin unilaterally transported it into Mississippi. Moreover, although Irvin suffered injury in Mississippi, that fact alone does not make Southern Snow amenable to suit in Mississippi. *See Seiferth*, 472 F.3d at 273 ("Once a product has reached the end of the stream [of commerce] and is purchased, a consumer's unilateral decision to take a product to a distant state, *without more*, is insufficient to confer personal jurisdiction over the manufacturer or distributor." (emphasis added)).

---

[3] The Supreme Court declined to address a similar issue in *Helicopteros Nacionales*, 466 U.S. at 415 n.10.

No. 11-60767

We also cannot say on this record that Irvin's claims sufficiently "relate to" Southern Snow's Mississippi contacts. Although Irvin points to the allegedly large figure of sales by Southern Snow to various Mississippi-based customers, this number includes sales of syrup and other snowball-making accessories—which did not cause Irvin's injuries—and no evidence in the record allows a comparison of the amount of sales attributable to these types of accessories versus the sales attributable to actual snowball machines. Indeed, on this record, we have no basis to determine how many snowball machines Southern Snow sends outside of Louisiana in general, or to Mississippi in particular. *See Bean Dredging*, 744 F.2d at 1085 (considering, for the purpose of its personal jurisdiction analysis, the volume of products—of the type that caused the plaintiff's injury—that was placed into the stream of commerce by the defendant).[4]

Counsel for Irvin conceded at oral argument that these absent facts bear heavily on the exercise of personal jurisdiction. Without them, she cannot satisfy her burden to show a sufficient nexus between her injury and Southern Snow's Mississippi contacts.[5] Accordingly, the district court appropriately concluded that it could not exercise personal jurisdiction over Southern Snow, and we need not decide the viability of Irvin's broad stream-of-commerce theory in the abstract.

AFFIRMED.

---

[4] We therefore need not and do not decide whether a claim may "relate to," but *not* "arise out of," a defendant's forum contacts. *Helicopteros Nacionales*, 466 U.S. at 415 n.10.

[5] We therefore have no occasion to consider whether the exercise of personal jurisdiction in Mississippi would comport with traditional notions of fair play and substantial justice. *See ITL International*, 669 F.3d at 501 n.41 (refusing to reach the third prong of the specific jurisdiction inquiry after finding that the second prong had not been satisfied).