Nellie R. PITTS and James H. Pitts, Plaintiffs

v.

FORD MOTOR COMPANY, Defendant.

Civil No. 1:14cv396–HSO–JCG.

United States District Court, S.D. Mississippi, Southern Division.

Signed Aug. 26, 2015.

James W. Nobles, Jr., James W. Nobles, Jr., Attorney, Clinton, MS, for Plaintiffs.

Bradley W. Smith, D. Sterling Kidd, George Clanton Gunn, IV, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, for Defendant.

## *MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S [9] MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

HALIL SULEYMAN OZERDEN, District Judge.

BEFORE THE COURT is the Motion to Dismiss for Lack of Personal Jurisdiction [9] filed by Defendant Ford Motor Company. The Motion is fully briefed. After consideration of the parties' submissions, the record, and relevant legal authorities, the Court finds that it lacks personal jurisdiction over Defendant Ford Motor Company in this case. Defendant's Motion [9] should be granted, and Plaintiffs' claims against Defendant should be dismissed without prejudice.

## I. *BACKGROUND*

### A. *Factual Background*

Plaintiffs Nellie R. Pitts and James H. Pitts ("Plaintiffs") are citizens of the State of Texas. Compl. 1[1].[1] Some time prior to October 30, 2012, Plaintiff James Pitts purchased a 2011 Ford Fusion automobile from a dealership in Silsbee, Texas, which sold automobiles manufactured by Defendant Ford Motor Company ("Ford").[2] *Id.*

---

1. The factual allegations in the Complaint are accepted as true for purposes of Ford's Motion.

2. In responding to the Motion to Dismiss [9] Plaintiffs appear to contend that the automobile at the center of this case is a "2012 Ford Focus," while Plaintiffs claim throughout the Complaint [1] that the automobile made the subject of their claims is a 2011 Ford Fusion. *Compare,* Mem. in Opp'n to Mot. to Dismiss 3, 5, 7[14], *with* Compl. 2–4[1]. For purposes of resolving the Motion to Dismiss [9], the Court views the Complaint [1] as correctly identify-

at 3. James Pitts was provided an express warranty that the automobile would be free from defects in workmanship and materials for a period of three (3) years or 36,000 miles, bumper-to-bumper. *Id.* at 4. The express warranty extended for five (5) years or 50,000 miles, bumper-to-bumper, with regard to the passenger restraint systems. *Id.*

According to Elizabeth Dwyer, who is employed by Ford as a Dealer Shared Services Manager, Ford is "in the business of designing and manufacturing new cars and trucks." Aff. of Elizabeth Dwyer 2[9–1]. Ford is incorporated in the State of Delaware and has its principal place of business in Dearborn, Michigan. *Id.* Ford sells its vehicles to "independently-owned dealerships" and "does not sell new vehicles directly to the public." *Id.* Ford does not have a manufacturing plant in the State of Mississippi. *Id.*

On October 30, 2012, while Plaintiffs' 2011 Ford Fusion was still within the express warranty period, Plaintiffs were involved in an automobile collision in Biloxi, Mississippi. Compl. 2, 4[1]. At the time of the collision, James Pitts was driving the 2011 Ford Fusion automobile, and Nellie Pitts was seated in the right front passenger seat with her lap and shoulder belt fastened. *Id.* Nellie Pitts suffered several injuries as a result of the accident. *Id.* at 3. According to Plaintiffs, the 2011 Ford Fusion automobile was defective in design, engineering, and manufacturing, particularly with regard to the passenger seat's lap and shoulder belt and the automobile's airbag system. *Id.* at 2–3. Plaintiffs contend that these defects proximately caused Nellie Pitts' injuries on October 30, 2012. *Id.* Plaintiffs assert that the passenger seatbelt and restraint system failed to operate properly and that one or

more of the air bags and side curtains failed to deploy. *Id.*

### B. *Procedural History*

Plaintiffs filed the Complaint [1] in this case on October 20, 2014, citing diversity of citizenship as the basis for the Court's subject matter jurisdiction. *Id.* at 1. Plaintiffs named Ford as the sole Defendant and advanced claims for defective design, manufacture, and engineering pursuant to the Mississippi Products Liability Act, Mississippi Code § 11–1–63. *Id.* at 1, 2, 4–5. Ford filed its Answer [4] on November 6, 2014, and an Amended Answer [6] on November 19, 2014. Ford's Amended Answer raised the defense of lack of personal jurisdiction, which was not asserted in Ford's original Answer [4]. On December 8, 2014, Ford filed its Motion to Dismiss [9] for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Ford contends that under the facts of this case, the Court lacks personal jurisdiction over Ford.

## II. *DISCUSSION*

### A. *Ford Has Not Waived the Defense of Lack of Personal Jurisdiction*

Plaintiffs contend that Ford's Motion to Dismiss [9] for lack of personal jurisdiction is untimely because Ford "waived the jurisdictional issues raised by the subject Motion by not incorporating the jurisdictional plea in its *initial* pleading." Pls.' Resp. to Def.'s Mot. 1[12] (emphasis supplied). "A party waives any defense listed in Rule 12(b)(2)-(5) by: … failing to … include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course." Fed.R.Civ.P. 12(h)(1)(B)(ii). While Ford did not include

---

ing the automobile as a 2011 Ford Fusion. However, this distinction is immaterial to the outcome of this case.

lack of personal jurisdiction pursuant to Rule 12(b)(2) as a defense in its original Answer [4], Ford included the defense in its Amended Answer [6], which was allowed as a matter of course under Rule 15(a)(1). Ford thus did not waive the defense of lack of personal jurisdiction, and Ford's Motion [9] is properly before the Court.

## B. *Legal Standard*

 "Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to [Rule] 12(b)(2)." *Herman v. Cataphora, Inc.,* 730 F.3d 460, 466 (5th Cir.2013). "[T]he party seeking to invoke the power of the court ... bears the burden of establishing jurisdiction but is required to present only prima facie evidence." *Pervasive Software, Inc. v. Lexware GmbH & Co.,* 688 F.3d 214, 219 (5th Cir.2012) (quotation omitted). "In determining whether a prima facie case exists, this Court must accept as true [a plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Id.* at 219–20. In cases arising under diversity of citizenship jurisdiction, the exercise of personal jurisdiction over a non-resident defendant is limited by the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 398 (5th Cir.2009). If Mississippi law does not support the exercise of personal jurisdiction, the Court need not consider the due process issue. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir. 1989).

## C. *The Mississippi Long–Arm Statute*

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure confers personal jurisdiction over any defendant who would be subject to personal jurisdiction under the long-arm statute of the state in which the district court sits. The Mississippi long-arm statute provides, in relevant part, as follows:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code § 13-3-57. Mississippi courts interpret this statute as defining

> "three activities" which will permit Mississippi courts to exercise personal jurisdiction over a nonresident defendant: "(1) if that person has entered into a contract to be performed in Mississippi; (2) has committed a tort in Mississippi; or, (3) is conducting business in Mississippi."

*Dunn v. Yager,* 58 So.3d 1171, 1184 (Miss. 2011) (quoting *Yatham v. Young,* 912 So.2d 467, 469–70 (Miss.2005)); *see also* Miss. Code § 13-3-57. The three prongs of Mississippi's long-arm statute are commonly referred to as the contract prong, the tort prong, and the doing-business prong. *ITL Int'l, Inc. v. Constenla,* 669 F.3d 493, 497 (5th Cir.2012). Plaintiffs assert that Ford is amenable to the personal jurisdiction of Mississippi courts under the tort prong because "[t]he tort committed by [Ford] was not complete until it manifested itself and caused injuries which occurred within the State of Mississippi." Pls.' Resp. to Def.'s Mot. 3[12]. Ford does

not address Plaintiffs' position regarding its amenability to personal jurisdiction under Mississippi's long-arm statute. Mem. in Supp. of Mot. to Dismiss 3[10].

█ Ford is amenable to suit under the tort prong of Mississippi's long-arm statute. A state's long-arm statute is applied as it is interpreted by that state's courts. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.1997). The Mississippi Supreme Court has noted that the tort prong "contains no requirement that the part of the tort which causes the injury be committed in Mississippi." *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So.2d 668, 672 (Miss.1994). Additionally, a "tort is not complete until the injury occurs, and if the injury occurs in [Mississippi] then, under the . . . statute, the tort is committed, at least in part, in [Mississippi], and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court." *Allred*, 117 F.3d at 282 (quoting *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss.1971)).

█ It is undisputed that Plaintiffs suffered injuries while occupying their 2011 Ford Fusion during an automobile collision in Biloxi, Mississippi. Under Mississippi's long-arm statute, the alleged tort was committed, in part, in Mississippi because Plaintiffs' injuries occurred in Mississippi. The Court's exercise of personal jurisdiction over Ford is thus proper under the tort prong of Mississippi's long-arm statute. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006); *see also Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir.1996).

### D. *The Fourteenth Amendment Due Process Clause*

#### 1. *Legal Standard*

█ "The Due Process Clause of the Fourteenth Amendment constrains a [state's] authority to bind a nonresident defendant to a judgment of its courts."

*Walden v. Fiore*, —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A nonresident defendant's physical presence within the territorial jurisdiction of the Court is not required. *Id.* However, Plaintiffs must show that Ford has "certain minimum contacts with [Mississippi] such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Where a defendant challenges personal jurisdiction without an evidentiary hearing, as is the case here, Plaintiffs bear the burden of making a prima facie showing that personal jurisdiction is proper. *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.2d 465, 469 (5th Cir.2006).

█ Personal jurisdiction may be general or specific. *Id.* General jurisdiction exists where the defendant has maintained "continuous and systematic" contacts with the forum state, and the Court may exercise jurisdiction over any action brought against the defendant in that state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction is claim-specific, and the Court may only exercise its jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414, 104 S.Ct. 1868.

#### 2. *General Jurisdiction*

█ General jurisdiction is available where the continuous corporate operations within a state are "so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those [continuous and systematic] activities." *Int'l Shoe*, 326 U.S. at 318, 66 S.Ct. 154. General juris-

diction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Hall,* 466 U.S. at 414–19, 104 S.Ct. 1868. The "continuous and systematic contacts test is a difficult one to meet" and "requires extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir.2008). Where the defendant is a foreign corporation, the corporation's affiliations with the state must be "so continuous and systematic" as to render it essentially "at home" in the forum state. *Goodyear Dunlop Tires Operations v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). Generally, a corporation is "at home" in the state where it is incorporated and the state where it maintains its principal place of business. *Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014); *see also Hall,* 466 U.S. at 408, 415–16, 104 S.Ct. 1868 (noting that mere purchases or sales, even at regular intervals, are not enough to warrant a state's assertion of general jurisdiction over a foreign defendant); *Whitener v. Pliva, Inc.,* 606 Fed.Appx. 762, 764–65 (5th Cir.2015) (recognizing that it is the "exceptional case" in which "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation" subject to general jurisdiction in that state).

Plaintiffs appear to rely primarily on a theory that Ford is susceptible to general jurisdiction in the State of Mississippi. *See* Mem. in Opp'n to Mot. to Dismiss 7–8, 10[14]. Plaintiffs contend that Ford is qualified and registered to do business in the State of Mississippi, licensed to sell or distribute new automobiles in Mississippi, contracts with Mississippi based dealers, provides operational guidelines to Mississippi dealers, has purchased a Mississippi dealership, advertises in Mississippi, and

has an agent for service of process in Mississippi. *Id.* at 3, 7–8, 10. Ford disputes that the advertising identified by Plaintiffs was "produced or reviewed" by Ford, and according to David Finnegan, a Retail Communications Manager employed by Ford, the advertising was likely created by Ford dealerships operating in the southeast United States. *See* Aff. of David Finnegan ¶¶ 3–4 [16-4]. Ford also maintains that Plaintiffs do not produce evidence detailing the number of sales made by Ford in the State of Mississippi as compared to other states, and that the contacts identified by Plaintiffs indicate at most that Ford does business in the State of Mississippi, which is insufficient to establish general jurisdiction over Ford. Rebuttal 7[16].

The Court finds that, even assuming the truth of Plaintiffs' allegations, the contacts Plaintiffs identify are insufficient to establish that Ford is susceptible to general jurisdiction in the State of Mississippi. A defendant corporation may be found subject to general jurisdiction in a particular state where "that corporation's 'affiliations with the [state] are so 'continuous and systematic,' as to render [it] essentially at home in the forum [state].' " *Daimler,* 134 S.Ct. at 761 (quoting *Goodyear,* 131 S.Ct. at 2851). The record is clear that Ford is neither incorporated nor has its principal place of business in Mississippi. The contacts that Plaintiffs have identified Ford as having with Mississippi demonstrate that Ford is at most "doing business" in Mississippi, and those contacts do not reveal activities that are so "continuous and systematic" as to render Ford "at home" in Mississippi. *See id.* at 760–61 ("Plaintiffs would have us … approve the exercise of general jurisdiction in every [state] in which a corporation 'engages in a substantial, continuous, and systematic course of business.' That for-

mulation, we hold, is unacceptably grasping.") (citation omitted). As a result, Plaintiffs have not established through prima facie evidence that general jurisdiction is proper, and if personal jurisdiction exists over Ford, it must arise from the Court's specific jurisdiction. *Id.* at 762, n. 20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.") (citation omitted).

### 3. *Specific Jurisdiction*

■ In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S.Ct. at 2851 (internal marks and citation omitted). For jurisdiction to comport with the limits of due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Walden*, 134 S.Ct. at 1122–23. Instead of asking whether the defendant is "at home" in the forum, this jurisdictional inquiry focuses on whether the defendant has sufficient minimum contacts with the forum and whether the plaintiff's cause of action arises out of or relates to those forum-related contacts. *Id.* at 1121.

■ In the case of specific jurisdiction, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction be fair and reasonable. *ITL Int'l, Inc.*, 669 F.3d at 498. Where, as here, the Court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, Plaintiffs need only make a prima facie showing that personal jurisdiction is proper. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464

(5th Cir.2013). If Plaintiffs make a successful showing of the first two prongs, then the burden shifts to Ford to show that the exercise of jurisdiction is unfair or unreasonable. *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir.2009) (citation omitted).

#### a. *Minimum Contacts*

■ Looking first to the "minimum contacts" prong, while a non-resident's physical presence within the state is not required, the non-resident must have certain "minimum contacts" with the state so as not to offend the "traditional notions of fair play and substantial justice." *Walden*, 134 S.Ct. at 1121 (citing *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154). The relationship with the state must arise of out of contacts that the defendant itself creates with the forum state, and the plaintiff cannot be the only link between the defendant and the forum. *Id.* at 1123.

■ Plaintiffs have submitted multiple facts and exhibits to establish Ford's minimum contacts with Mississippi, including: (1) the identity of Ford's registered agent for process in Mississippi; (2) a 2014 Certificate of Good Standing issued by the Mississippi Office of the Secretary of State [12–1]; (3) three separate 2014 Manufacturer Licenses [12–2] [12–3] [12–4] issued to Ford by the Mississippi Motor Vehicle Commission; (4) a screenshot of a Mississippi Ford retailer's website [12–10]; and (5) a link to a Ford F–150 promotional video [12–11] relating to University of Mississippi athletics. It also is undisputed that Ford sells products in Mississippi through franchise dealerships. Rebuttal 5[16]. These facts make clear that Ford has deliberately targeted the State of Mississippi and purposefully availed itself of the privilege of conducting business activities within the State of Mississippi wholly outside of Ford's relationship with Plaintiffs. The "minimum contacts" prong of

the specific jurisdiction analysis is thus satisfied.

### b. *Nexus between Ford's Mississippi Contacts and Plaintiffs' Claims*

The second prong of the specific jurisdiction analysis requires "a nexus between the defendant's contacts and the plaintiff's claims." *ITL Int'l, Inc.*, 669 F.3d at 498. The "nexus" requisite for specific jurisdiction is established when the plaintiff's cause of action "arises out of" or is "related to" the defendant's forum contacts. *Pervasive Software Inc.*, 688 F.3d at 221. "The Supreme Court has yet to distinguish between the 'arise out of' and 'relate to' requirements." *In re Chinese–Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 543 (5th Cir.2014) (citation omitted). The nexus must arise out of contacts the defendant itself creates with the forum state, and the plaintiff cannot be the only link between the defendant and the forum. *Walden*, 134 S.Ct. at 1121, 1123. "[A] defendant's relationship with a plaintiff . . ., standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum [state]." *Id.* at 1125. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum [state] in a meaningful way." *Id.*

Plaintiffs appear to rely on *In re Chinese–Manufactured Drywall Products Liability Litigation* as supporting their position that contacts sufficient for specific personal jurisdiction exist, but this reliance is misplaced because the contacts in that litigation were more closely connected to the plaintiffs' claims. 753 F.3d 521, 536–39, 543–44, 547–50 (5th Cir.2014). *In re Chinese–Manufactured Drywall* involved an appeal encompassing three cases which had been transferred to the Chinese drywall multidistrict litigation ("MDL") in the United States District Court for the Eastern District of Louisiana. *Id.* In one of the cases, the plaintiffs advanced class claims in the United States District Court for the Northern District of Florida on behalf of "all persons and entities" in Florida, Georgia, Alabama, Mississippi, Louisiana, and Texas who used Chinese drywall manufactured by the defendants. *Id.* at 527. The defendants' contacts with the State of Florida included direct sales to Florida customers, contracts with Florida entities to exclusively purchase and market the defendants' drywall, shipment of drywall to Florida, and customization of drywall to meet the specifications of Florida entities. *Id.* at 536–39. In finding that the plaintiffs' claims arose out of and related to these Florida contacts, the Fifth Circuit noted that there was not only evidence linking the drywall to a plaintiff that installed the drywall in Florida, but there was also evidence that the plaintiffs' complaint was filed on behalf of homebuilders and broadly alleged that the defendant "distributed and sold drywall to numerous purchasers in the State of Florida" and that the drywall was "installed in numerous homes in Florida." *Id.* at 543–44.[3]

---

**3.** The appeal also involved two cases filed in the Eastern District of Louisiana. The plaintiffs in those cases asserted a market-share liability claim against defendants and a claim for damages resulting from the installation of the defendants' drywall in the plaintiffs' homes. *In re Chinese–Manufactured Drywall*, 753 F.3d at 527–28. The Fifth Circuit found that the plaintiffs' market-share liability claim, which alleged that the defendants sold drywall to the Louisiana market and injured them, "arises from [the defendants'] Louisiana contacts" including the marketing, sale, and shipment of drywall to Louisiana customers, and the evidence demonstrated the existence of defendants' drywall in the homes of the Louisiana plaintiffs. *Id.* at 549. With respect to the claims for damages caused by the installation of the defendants' drywall, the

The record in this case reveals that the nexus between Ford's Mississippi contacts[4] and the 2011 Ford Fusion that injured Plaintiffs "is too attenuated to support personal jurisdiction based on an 'arose-out-of' theory." *Irvin v. Southern Snow Mfg., Inc.*, 517 Fed.Appx. 229, 232 (5th Cir.2013) (finding no jurisdiction in Mississippi where Louisiana defendant sold snowball machine to Louisiana customer in Louisiana and Plaintiff unilaterally transported machine into Mississippi and suffered injury in Mississippi). Ford sold the Fusion to a Texas dealership, which in turn sold the automobile in Texas to James Pitts, a Texas customer. Compl. 3[1]. James Pitts unilaterally transported the automobile to Biloxi, Mississippi, where Plaintiffs claim they were injured as a result of defects in the automobile. *Id.* at 2. Plaintiffs have not sufficiently demonstrated a meaningful connection between Plaintiffs' injuries and the Mississippi contacts Plaintiffs have identified Ford as having. The mere fact that Plaintiffs were injured in Mississippi does not, by itself, create specific jurisdiction over Ford in Mississippi. *See Irvin*, 517 Fed.Appx. at 232 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir.2006)).

There is a similar lack of evidence demonstrating that Plaintiffs' claims sufficiently "relate to" Ford's Mississippi contacts as identified by Plaintiffs. *Id.* (finding negligence and defective design claims advanced by a plaintiff injured while she cleaned a snowball machine did not "suffi-ciently 'relate to'" the defendant snowball machine manufacturer's forum contacts where the plaintiff submitted evidence of sales of all of the defendant's products to the forum rather than evidence specific to sales of "actual snowball machines" to the forum). Plaintiffs claim that "the 2011 Ford Fusion [a]utomobile contained defects in design, engineering[,] and manufacturing which rendered the [automobile] unreasonably dangerous." Compl. 4[1]. However it is undisputed that Ford does not manufacture vehicles in Mississippi. Aff. of Elizabeth Dwyer 2[9–1]. That Ford sells vehicles in Mississippi, without more, is insufficient to find that Plaintiffs' claims "relate to" such sales, and Plaintiffs have offered no evidence showing the number of Ford Fusion automobiles sold in Mississippi. In addition, Plaintiffs did not purchase their Fusion in Mississippi, and there is no evidence that Plaintiffs' injuries otherwise arose out of the sale of a Ford automobile in Mississippi. Nor is there evidence that Ford directed its sales of Fusion automobiles to Mississippi. The only connection between Mississippi and Ford Fusion automobiles is that Plaintiffs drove a 2011 Fusion into Mississippi and suffered injuries in an automobile accident in Biloxi. Plaintiff's unilateral activity, alone, cannot support a finding that specific jurisdiction is proper over a foreign defendant. *See, e.g., Walden*, 134 S.Ct. at 1122 (quoting *Hall*, 466 U.S. at 417, 104 S.Ct. 1868). For these reasons, the Court finds that it lacks personal jurisdiction over Ford under the facts of this case. Ford's Motion to Dismiss will be granted.[5]

Fifth Circuit reasoned that "[t]hese claims ... arise from [the defendants'] manufacturing allegedly faulty drywall, marketing it to Louisiana customers, and shipping it to Louisiana." *Id.*

**4.** According to Plaintiffs, those contacts include Ford's being qualified and registered to do business in the State of Mississippi, being licensed to sell or distribute new automobiles in Mississippi, contracting with Mississippi based dealers, providing operational guide-lines to Mississippi dealers, purchasing a Mississippi dealership, advertising in Mississippi, and having an agent for service of process in Mississippi. Mem. in Opp'n to Mot. to Dismiss 3, 7–8, 10[14].

**5.** The Court's finding that Ford is not subject to specific jurisdiction in the State of Mississippi is expressly limited to the particular facts of this case and should not be interpreted or construed otherwise. *See, e.g., Kipp v.*

## III. CONCLUSION

Taking Plaintiffs' uncontroverted factual allegations as true and resolving all conflicts in the jurisdictional facts contained in the record in Plaintiffs' favor, the Court is of the view that exercising personal jurisdiction over Ford in this case does not comport with the principles of due process. Accordingly,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Ford Motor Company's Motion to Dismiss [9] is **GRANTED,** and Plaintiffs Nellie R. Pitts and James H. Pitts' claims against Ford Motor Company are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

Ski Enter. Corp. of Wisconsin, 783 F.3d 695, 698 (7th Cir.2015) ("Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum.") (citing Daimler, 134 S.Ct. at 751).