# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 9, 2013

Lyle W. Cayce
Clerk

No. 12-60155

MARY P. AINSWORTH, Widow and Personal Representative of James T. Ainsworth, Deceased, Individually and on Behalf of All Wrongful Death Beneficiaries, including the Minor Children, S.A., D.A., and M.A., Mary P. Ainsworth is Mother and Next Friend,

Plaintiff - Appellee

v.

MOFFETT ENGINEERING, LTD.,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The outcome of this appeal turns on our interpretation of the Supreme Court's recent decision in *J. McIntyre Machinery, Ltd. v. Nicastro*[1]—specifically whether that decision renders our stream-of-commerce approach to personal jurisdiction improper. Finding that application of the stream-of-commerce approach in this case does not run afoul of *McIntyre*'s narrow holding, we affirm the district court's interlocutory order finding personal jurisdiction and denying dismissal.

---

[1] 131 S. Ct. 2780 (2011).

## I.

On September 29, 2010, Mary P. Ainsworth ("Ms. Ainsworth"), individually and on behalf of all wrongful death beneficiaries, filed a product liability and wrongful death action against Cargotec USA, Inc. ("Cargotec") and Moffett Engineering, Ltd. ("Moffett") in the Southern District of Mississippi. Her husband, James T. Ainsworth ("Mr. Ainsworth"), had been run over and killed by an allegedly defective forklift while he was working at Wayne Farms in Ovett, Mississippi. The forklift was designed and manufactured by Moffett, an Irish corporation with its principal place of business in Ireland, but pursuant to an exclusive sales and distribution agreement between Moffett and Cargotec it was sold to Wayne Farms by Cargotec, a Delaware corporation with its principal place of business in Ohio.[2] Moffett filed a motion to dismiss for lack of personal jurisdiction, which the district court denied. The Supreme Court subsequently issued its opinion in *McIntyre*. Moffett then asked the district court to reconsider its ruling in light of *McIntyre*. The district court denied that motion, finding that *McIntyre*'s fractured opinion limited its applicability, and that the present case fell outside of *McIntyre*'s narrow holding. We granted Moffett leave to appeal the district court's interlocutory order.

## II.

"Whether the district court can properly exercise personal jurisdiction over the defendant is an issue of law we review *de novo*."[3] The burden of establishing personal jurisdiction over a non-resident defendant lies with the plaintiff.[4] In

---

[2] Moffett and Cargotec are both wholly-owned subsidiaries of Cargotec Oyj, a Finnish corporation. However, it is undisputed that they are separate companies that do not share any common officers or directors and are separated in the company hierarchy by several layers of distinct subsidiaries.

[3] *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

[4] *Id.*

evaluating whether the plaintiff has met that burden at this preliminary stage, "the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff."[5]

## III.

The framework for evaluating a motion to dismiss for lack of personal jurisdiction is well-settled. "A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution."[6] The parties agree that this appeal turns on the limits of due process. "Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable."[7] The district court found the second and third requirements met in this case; the only issue presented on interlocutory appeal is whether Moffett had "minimum contacts . . . purposefully directed at the forum state."[8]

In cases involving a product sold or manufactured by a foreign defendant, this Circuit has consistently followed a "stream-of-commerce" approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by

---

[5] *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012).

[6] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[7] *ITL Int'l*, 669 F.3d at 498.

[8] *Id.*

consumers in the forum state."[9]   Under that test, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce,"[10] but "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'"[11]

The district court concluded that Moffett is subject to personal jurisdiction in Mississippi because it was foreseeable to Moffett that its products would be purchased by consumers in Mississippi.  The district court based its conclusion on the exclusive sales and distribution agreement between Moffett, the manufacturer of the forklift, and Cargotec, its seller to Mr. Ainsworth's employer.  Pursuant to that agreement, Cargotec is the exclusive marketer and distributor of Moffett's forklifts throughout the United States.  Cargotec is Moffett's only customer in the United States; Moffett does not sell forklifts directly to other customers in the United States.  The district court reasoned that Moffett was subject to personal jurisdiction in Mississippi under the stream-of-commerce approach because "(1) it had entered into a sales and distribution agreement which specifically defined Cargotec's sales territory as the entire United States, (2) it was aware that Cargotec marketed its product throughout the entire United States, and (3) it made no attempt to limit the scope of Cargotec's marketing efforts."  On interlocutory appeal, Moffett argues that application of the Fifth Circuit's stream-of-commerce approach is no longer proper after the Supreme Court's decision in *McIntyre*.

---

[9] *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).

[10] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (quoting *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993)) (alterations in original).

[11] *INT Int'l*, 669 F.3d at 498 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

We disagree and find that application of the stream-of-commerce approach in this case does not run afoul of *McIntyre*'s narrow holding. The facts of *McIntyre* are straightforward. Robert Nicastro injured his hand in New Jersey while using a machine manufactured by J. McIntyre Machinery ("McIntyre"). The machine had been manufactured in England, where McIntyre was incorporated and operated, then sold to a U.S. distributor, which in turn sold and shipped the machine to New Jersey. McIntyre did not market, sell, or ship machines to New Jersey, and the U.S. distributor had only sold one of McIntyre's machines in New Jersey—the machine that caused Mr. Nicastro's injury. Mr. Nicastro sued McIntyre in New Jersey, and the New Jersey Supreme Court held personal jurisdiction was proper.

The Supreme Court reversed but did not produce a majority opinion. Justice Kennedy authored a plurality opinion, joined by Chief Justice Roberts, Justice Scalia, and Justice Thomas. Under the plurality's approach to personal jurisdiction, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."[12] Our stream-of-commerce test, in not requiring that the defendant target the forum, is in tension with the plurality opinion, under which Moffett would likely not be subject to personal jurisdiction in Mississippi. But that does not answer the question before us. The reasoning of a Supreme Court opinion that does not command a majority vote is not binding precedent.[13] Instead, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members

---

[12] 131 S. Ct. at 2788.

[13] *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987).

who concurred in the judgments on the narrowest grounds.'"[14] In *McIntyre*, Justice Breyer's concurring opinion, joined by Justice Alito, furnished the narrowest grounds for the decision and controls here.

Justice Breyer made clear that his view that "resolving [the] case require[d] no more than adhering to [the Supreme Court's] precedents" and that his decision was "based on the facts," which involved only a single sale in New Jersey.[15] He explained that under *any* of the Court's precedents "a single isolated sale" is not an adequate basis for personal jurisdiction.[16] Here, from 2000 through September 2010, Cargotec sold 203 Moffett forklifts to customers in Mississippi—a far cry from the single sale in *McIntyre*.

Justice Breyer did criticize New Jersey's test, which would subject a foreign defendant to jurisdiction so long as it "knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states."[17] He thought that it could be read too broadly—it would "rest jurisdiction . . . upon no more than the occurrence of a product-based accident in the forum State" and "permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue."[18]

---

[14] *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ)).

[15] *McIntyre*, 131 S. Ct. at 2791–92 (Breyer, J., concurring).

[16] *Id.* at 2792.

[17] *Id.* at 2793 (emphasis in original).

[18] *Id.*

We are not persuaded that Mississippi's exercise of jurisdiction must call upon such a broad power. To the contrary, Justice Breyer's concurrence was explicitly based on Supreme Court precedent and on *McIntyre*'s specific facts, we find that this case falls outside its limited scope. This is not a case of a single, or even a few, isolated sales in Mississippi. The facts in the record establish that Moffett could have "reasonably anticipated" being haled into court in Mississippi. Cargotec sells or markets Moffett products in all fifty states, and Moffett makes no attempt to limit the territory in which Cargotec sells its products. From 2000 through September 2010, Moffett sold 13,073 forklifts to Cargotec, worth approximately €254,000,000. Cargotec sold 203 of those forklifts, worth approximately €3,950,000, to customers in Mississippi. Those Mississippi sales accounted for approximately 1.55% of Moffett's United States sales during that period. Moreover, the record indicates that Moffett designed and manufactures a forklift for poultry-related uses. Thus, even though Moffett did not have specific knowledge of sales by Cargotec in Mississippi, it reasonably could have expected that such sales would be made, given the fact that Mississippi is the fourth largest poultry-producing state in the United States.

The only other circuit court to squarely address *McIntyre*'s narrowest holding reached a similar conclusion. In *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, the Federal Circuit explained that "the crux of Justice Breyer's concurrence was that the Supreme Court's framework applying the stream-of-commerce theory—including the conflicting articulations of that theory in *Asahi*—had not changed, and that the defendant's activities in McIntyre failed to establish personal jurisdiction under any articulation of that theory."[19] It found that "[t]he narrowest holding is that which can be distilled from Justice Breyer's concurrence—that the law remains the same after *McIntyre*."[20] Because it

---

[19] 689 F.3d 1358, 1363 (Fed. Cir. 2012).

[20] *Id.*

concluded "that *McIntyre* did not change the Supreme Court's jurisdictional framework," the Federal Circuit went on to "apply [its] precedent that interprets the Supreme Court's existing stream-of-commerce precedents."[21]

## IV.

For the reasons set forth above, we AFFIRM the district court's interlocutory order finding personal jurisdiction and denying dismissal.

---

[21] *Id.*