Taylor, J., dissenting.
I respectfully dissent. I would affirm the order on appeal because Imerys' affidavit failed to dispute the key jurisdictional allegations of the plaintiff's complaint, and those allegations demonstrate that Florida's assertion of personal jurisdiction over Imerys is constitutional. Because the plaintiff's undisputed allegations establish that Imerys placed its talc into the stream of commerce over a period of decades with the knowledge and intention that it would be sold in Florida as the main ingredient in Johnson & Johnson's widely-available baby powder, Imerys had sufficient minimum contacts with Florida in order to satisfy due process. Moreover, the maintenance of the suit in Florida does not offend traditional notions of fair play and substantial justice.
The relevant jurisdictional allegations in the plaintiff's complaint are as follows. The plaintiff alleged that, for most of her life, she purchased Johnson & Johnson baby powder in Broward County, Florida. She alleged that she used the powder "on a daily basis for multiple decades prior to her diagnosis of ovarian cancer in 2013." She also alleged that, at all material times, Imerys mined and sold talc to Johnson & Johnson, and that Imerys knew Johnson & Johnson was packaging and selling the talc *807 to consumers as baby powder. She further alleged that, at all material times, Imerys "placed such products into the stream of commerce with knowledge and intent that such products be sold in the State of Florida." Finally, she alleged that Johnson & Johnson and Imerys played an integral role in a trade group called the Talc Interested Party Task Force, an anti-regulatory organization formed to defend talc use in response to scientific evidence finding talc to be a carcinogen. Imerys' affidavit disputed none of those material allegations.
Due process requires that a nonresident have sufficient minimum contacts with the forum state such that the maintenance of a suit "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). Critical to the due process analysis is whether the nonresident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
For a nonresident defendant to anticipate being haled into a Florida court, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz , 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla , 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ). "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen , 444 U.S. at 297-98, 100 S.Ct. 580. Thus, "if the sale of a product ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States ...." Id. at 297, 100 S.Ct. 580.
The United States Supreme Court has twice attempted to clarify World-Wide Volkswagen 's stream-of-commerce doctrine, but has yet to issue a majority opinion as to the proper standard for determining when personal jurisdiction in the forum state can be premised upon a nonresident's placement of goods into the stream of commerce. See J. McIntyre Mach., Ltd. v. Nicastro , 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) ; Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty. , 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
In Asahi Metal , the Supreme Court unanimously held that it would be unreasonable and unfair for a California court to exercise personal jurisdiction over a Japanese manufacturer of tire valve stems with respect to a foreign company's indemnification claim against the manufacturer arising out of a motorcycle accident, given the international context, the heavy burden on the foreign defendant, and the slight interests of the plaintiff and the forum state. 480 U.S. at 114-16, 107 S.Ct. 1026. However, the fractured court did not produce a majority opinion on the question of when minimum contacts may be premised on a stream-of-commerce theory. See id. at 111-12, 107 S.Ct. 1026 (O'Connor, J., plurality opinion) (endorsing the view that the due process clause requires "something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the *808 defendant"); id. at 117, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in judgment) ("The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."); id. at 122, 107 S.Ct. 1026 (Stevens, J., concurring in part and concurring in the judgment) ("Whether or not this conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components.").
The Supreme Court made a second attempt to clarify the stream-of-commerce doctrine in Nicastro , but that case produced yet another fragmented decision. There, a plaintiff seriously injured his hand while using a metal-shearing machine, and later brought suit in New Jersey against the machine's British manufacturer. Nicastro , 564 U.S. at 878, 131 S.Ct. 2780. The relevant jurisdictional facts were that: (1) an independent distributor on one occasion sold and shipped one machine to the plaintiff's employer in New Jersey; (2) the British manufacturer permitted the independent distributor to sell its machines to anyone in America; (3) and the British manufacturer attended trade shows in major American cities. Id. at 888, 131 S.Ct. 2780 (Breyer, J., concurring). On those facts, the Supreme Court held that it was not constitutionally proper for New Jersey to exercise jurisdiction over the British manufacturer. Id.
Justice Kennedy's plurality opinion, joined by three other justices, took the position that a "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." Id. at 882, 131 S.Ct. 2780 (Kennedy, J., plurality opinion).
By contrast, Justice Breyer's concurring opinion, joined by Justice Alito, rejected "the plurality's seemingly strict no-jurisdiction rule." Id. at 890, 131 S.Ct. 2780 (Breyer, J., concurring). Instead, Justice Breyer concluded that "the outcome of this case is determined by our precedents." Id. at 887, 131 S.Ct. 2780. Justice Breyer found that the contacts between the British manufacturer and New Jersey were not constitutionally sufficient to support New Jersey's exercise of personal jurisdiction, explaining that "[n]one of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient." Id. at 888, 131 S.Ct. 2780.
Justice Breyer reasoned that all of the competing tests from Asahi Metal had "strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." Id. at 888-89, 131 S.Ct. 2780. However, Justice Breyer did not affirmatively adopt any of the standards from Asahi Metal , and instead adhered strictly to Supreme Court precedents and the "limited facts" of the case. Id. at 889-93, 131 S.Ct. 2780.
In the present case, the majority relies heavily upon Justice Kennedy's plurality opinion in Nicastro , effectively treating it as controlling precedent.[2] However, *809 "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States , 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks omitted). Thus, under the rule of Marks , Justice Breyer's concurring opinion furnished the narrowest grounds for the Nicastro decision and represents the holding of the Court.
The narrow rulings of Nicastro and Asahi Metal do not alter existing Florida precedents holding that a nonresident manufacturer who serves Florida's market by "continuous and systematic activity," even when done indirectly through others, is subject to the jurisdiction of Florida courts. See Ford Motor Co. v. Atwood Vacuum Mach. Co. , 392 So.2d 1305, 1307, 1310-13 (Fla. 1981) (holding that a nonresident manufacturer of component parts in Ford vehicles, who knew that Ford automobiles would be shipped to Florida and sold, was subject to jurisdiction in Florida: "Continuous and systematic activities provide a reasonable basis for the assertion of jurisdiction.... [T]he fact that a nonresident manufactures a component part outside the state and takes no part in the sale, distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction.... [The manufacturer's] lack of direct presence and activity within the borders of Florida is no bar to our holding that the minimum contacts test of International Shoe is met.") (italics added); McHugh v. Kenyon , 547 So.2d 318, 319 (Fla. 4th DCA 1989) (holding that Florida had jurisdiction over a nonresident manufacturer of ladders whose products were "placed into the stream of commerce" and who had "a reasonable expectation that large numbers" would be purchased here: "A manufacturer that produces hundreds of thousands of product units that are distributed over a five-year period in the United States, of which at least 6,000 were marketed in Florida, should reasonably anticipate being sued in this state in connection with product defects causing injury."); Louis Winer Co., Inc. v. San Francisco Mercantile Co., Inc. , 501 So.2d 171, 173 (Fla. 4th DCA 1987) (holding that Florida obtained personal jurisdiction over a nonresident manufacturer of component parts of a nightgown where it was undisputed that "the movement of these products into Florida was systematic and continuous").
As this court stated in Louis Winer : "[P]ersonal jurisdiction may be asserted over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State, but not where the product's presence in that state is a single, isolated occurrence." 501 So.2d at 173 (internal quotation marks omitted). This statement of law is derived from World-Wide Volkswagen and is consistent with Justice Breyer's concurring opinion in Nicastro , which represents the most recent controlling opinion from the United States Supreme Court on this topic.
Contrary to the majority's suggestion in this case, neither the United States Supreme Court, nor the Florida Supreme Court, has ever overruled Atwood or its progeny. The majority cannot sidestep *810 clear precedents from the Florida Supreme Court and this court by relying upon nonbinding plurality opinions of the United States Supreme Court. While Atwood predates other important decisions on personal jurisdiction, the actual holdings of those more recent decisions cannot be said to have overruled Atwood.[3] Thus, the panel in this case is bound by Atwood and this court's subsequent decisions applying Atwood. See Hoffman v. Jones , 280 So.2d 431, 440 (Fla. 1973) (holding that "a District Court of Appeal does not have the authority to overrule a decision of the Supreme Court of Florida"); Carr v. Carr , 569 So.2d 903, 903 (Fla. 4th DCA 1990) (explaining that "we must follow the law of our own cases until we are overruled or until we recede from them").
Because this court is bound by Atwood and its progeny, the majority's reliance upon post- Nicastro cases from other jurisdictions is misplaced. In any event, while the majority cites cases from other jurisdictions applying a narrow conception of the stream-of-commerce doctrine, the stream-of-commerce case law from other jurisdictions is hardly uniform. Indeed, some out-of-state cases have found the exercise of personal jurisdiction to be proper where a nonresident defendant placed its products into the stream of commerce with the reasonable expectation that substantial sales would take place in the forum state. See, e.g. , Ainsworth v. Moffett Eng'g, Ltd. , 716 F.3d 174, 179 (5th Cir. 2013) (holding that Mississippi's exercise of personal jurisdiction over an Irish forklift manufacturer in a products liability action did not violate the manufacturer's due process rights, as the manufacturer could have reasonably anticipated being haled into court in Mississippi where its distributor sold 203 forklifts, worth about $3,950,000, to customers in Mississippi); State v. LG Elecs., Inc. , 186 Wash.2d 169, 375 P.3d 1035, 1042 (2016) (explaining that Nicatsro "did not foreclose an exercise of personal jurisdiction over a foreign defendant where a substantial volume of sales took place in a state as part of the regular flow of commerce"), cert. denied sub nom. Koninklijke Philips N.V. v. Washington , --- U.S. ----, 137 S.Ct. 648, 196 L.Ed.2d 522 (2017).
Put simply, because the United States Supreme Court has not yet articulated a clear standard for stream-of-commerce cases, the outcome of this case is dictated by precedents from the Florida Supreme Court and this court. The applicable standard, therefore, is that Florida may exercise personal jurisdiction over a nonresident manufacturer who serves Florida's market by "continuous and systematic activity indirectly through others," notwithstanding the manufacturer's "lack of direct presence and activity within the borders of Florida." Atwood , 392 So.2d at 1313. In other words, minimum contacts exist where a nonresident manufacturer places its products into the stream of commerce with the expectation that large quantities of the products would ultimately be sold in the forum state. McHugh , 547 So.2d at 319.
Here, Imerys has not disputed the plaintiff's allegation that Imerys supplied Johnson & Johnson with the talc for its baby powders "at all material times," which the plaintiff alleged was "multiple decades" before she was diagnosed with cancer in 2013. Because Imerys has not disputed the allegation that it placed its talc into the stream of commerce over "multiple decades" with the knowledge and intent that *811 it would be sold in Florida, I would find that the exercise of personal jurisdiction over Imerys does not violate due process.[4]
In short, this is not a case involving a single isolated sale or even multiple occasional sales. The relevant allegations of the plaintiff's complaint have not been disputed, and they demonstrate "continuous and systematic activity" by Imerys to serve the Florida market. Where a nonresident manufacturer's components move through the stream of commerce in a "continuous and systematic" effort to serve the forum state's market, the fact that the manufacturer "takes no part in the sale, distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction." Atwood , 392 So.2d at 1310, 1313. Here, the trial court's ruling is supported by the undisputed jurisdictional allegations in the complaint and by governing Florida case law.
We should therefore affirm the order denying the talc company's motion to dismiss this products liability action for lack of personal jurisdiction.

Likewise, in Southern Wall Products, Inc. v. Bolin , 251 So.3d 935 (Fla. 4th DCA 2018), this court quoted heavily from Justice Kennedy's plurality opinion in Nicastro. To the extent Bolin could be read as suggesting that Justice Kennedy's plurality opinion in Nicastro represents "the current Supreme Court position on minimum contact analysis," id. at 941, I disagree with such a suggestion. However, I believe Bolin was correctly decided on its facts.

For example, the Florida Supreme Court's decision in Venetian Salami Co. v. Parthenais , 554 So.2d 499 (Fla. 1989), which did not even mention Atwood , did not somehow overrule it. See Puryear v. State , 810 So.2d 901, 905 (Fla. 2002) (proclaiming that the Florida Supreme Court "does not intentionally overrule itself sub silentio").

This case is readily distinguishable from Stevenson v. Cyprus Amax Minerals Co. , 617CV417ORL40DCI, 2018 WL 3361884, at *1 (M.D. Fla. July 10, 2018), cited by the majority. There, the plaintiff claimed to have been exposed to asbestos-contaminated talc powder between 1942 and 1985, but the evidence showed that Imerys' predecessor supplied Johnson & Johnson with talc for just one month in 1980. By contrast, in this case, the plaintiff has alleged "multiple decades" of exposure to Imerys' talc.