# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2020

Lyle W. Cayce
Clerk

No. 18-41151

HENRY ZOCH, II, Individually and on behalf of The Estate of Henry Zoch III, Deceased,

      Plaintiff - Appellant

v.

MAGNA SEATING (GERMANY) GMBH, formerly known as Intier Automotive Seating Systems, GmbH,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:17-CV-578

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:*

      Plaintiff-Appellant, Henry Zoch, II, appeals the district court's dismissal of his claims against Defendant-Appellee, Magna Seating (Germany) GmbH, under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The primary issue for our consideration in this appeal is whether the district court erred in determining that, under a stream-of-commerce theory, it could

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-41151

not exercise specific jurisdiction over Magna Seating (Germany) GmbH, a foreign manufacturer of vehicle component parts. For the reasons set forth herein, under the particular facts of this case, we conclude that specific jurisdiction is lacking and that the district court's judgment should be affirmed.

## FACTS AND PROCEEDINGS

### *Underlying Facts*

On October 15, 2014, 31-year-old Henry Zoch, III ("Zoch") was driving his 2008 Daimler Smart Fortwo in Plano, Texas, when he was rear-ended by a 2006 Ford Taurus after slowing or stopping for traffic. The impact pushed Zoch's vehicle into the Toyota Camry in front of it. Neither of the drivers of the other two vehicles involved was seriously injured, and the damage to Zoch's vehicle was relatively minimal. However, due to an alleged malfunction in the driver's seat anchor of Zoch's Smart Fortwo, the seat collapsed "rear-ward" and "inboard" during the accident, causing Zoch to be propelled backward inside the vehicle and hit his head on the rear of the vehicle's interior. As a result, Zoch suffered a brain injury and died the following day.

The Smart Fortwo that Zoch owned and was driving at the time of his accident (sometimes referred to herein as "the subject vehicle") was designed by Daimler AG ("Daimler") in Germany. It, like other 2008 Smart Fortwos, was manufactured in France, using component parts from various suppliers. The metal structural components of the driver's seat for the vehicle were designed by German company C. Rob Hammerstein GmbH & Co. KG, later known as Johnson Controls Metals and Mechanisms GmbH & Co. KG, ("JCMM") in Germany in accordance with specifications provided to it by Daimler AG. One of JCMM's sister companies then manufactured the metal and structural components of the 2008 Smart Fortwo seats, which were sold and supplied to Appellee herein, Magna Seating (Germany) GmbH ("Magna"),

2

formerly known as Intier Automotive Seating Systems, GmbH.[1]  Magna, in turn, assembled the seats for the 2008 Smart Fortwo, including the structure, trim, foam and plastic parts, in Germany, after which it sold and furnished the finished seats to Daimler's Smart Fortwo assembly plant in France. Completed 2008 Smart Fortwos were sold across the globe, with Europe being the largest market for the vehicle.

After being manufactured in France, the subject vehicle was sold to Smart USA Distributor LLC, which was the general importer of Smart vehicles to the United States at the time.  In September 2008, Smart USA Distributor LLC sold the vehicle to Mercedes-Benz of Houston North.  Thomas Berggren III bought the vehicle from that dealership on or around September 19, 2008. Mr. Berggren kept and used the vehicle in Louisiana for about six years.  A Toyota dealership in Plano, Texas, acquired the vehicle from Rosary Berggren, a Louisiana resident, through a trade-in. Zoch then purchased the instant vehicle and, shortly thereafter, he and the vehicle were involved in the fatal accident.

### District Court Proceedings

Following Zoch's death, his father, Henry Zoch, II ("Plaintiff"), instituted this products-liability lawsuit on behalf of himself and Zoch's estate, against multiple parties allegedly responsible for Zoch's death, including Magna, in the United States District Court for the Eastern District of Texas, Tyler Division, invoking diversity jurisdiction.[2]  Magna is alleged to have "designed, tested, and supplied the [driver's] seat [in Zoch's Smart Fortwo], chose[n] the metal used in the seat's anchorage and fittings, and designed the seat-related

---

[1] Magna, a German company, "designs, develops, and manufactures automobile seats, seating assemblies and component parts in Germany, which are then supplied to various automobile manufacturer assembly plants in Europe."

[2] The case was later transferred to the Sherman division on a 28 U.S.C. § 1404(a) motion to transfer venue.

components and anchorages generally." Plaintiff's complaint asserts causes of action against all defendants for, *inter alia*, "design defect," "manufacturing defect," negligence, and violation of Texas Civil Practice and Remedies Code 82.003.

After allowing the parties to conduct limited jurisdictional discovery, but without conducting a hearing, the magistrate judge ("magistrate") issued a report and recommendation suggesting that a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction filed by Magna should be granted. In his report and recommendation, the magistrate rejected Plaintiff's arguments that the court could exercise specific jurisdiction over Magna under the stream-of-commerce theory. The district judge adopted the magistrate's report and recommendation, granted Magna's motion, and dismissed the claims against Magna for lack of personal jurisdiction.[3] Plaintiff now appeals the district court's ruling, arguing that the magistrate and the district court improperly applied a stream-of-commerce approach that is stricter than the one adopted by this court. As discussed below, we find that it was proper to grant Magna's motion to dismiss for lack of personal jurisdiction.

## STANDARD OF REVIEW

We review a Rule 12(b)(2) dismissal for lack of personal jurisdiction de novo. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). The plaintiff has the burden of establishing jurisdiction. *Id.* Where, as here, the district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing, the plaintiff may meet his burden with prima facie evidence. *Id.*; *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). In determining whether the plaintiff has presented a

---

[3] In the same order, the district court dismissed Plaintiff's claims against two other defendants—JCMM and Magna International, Inc.—for lack of personal jurisdiction. Plaintiff does not appeal the dismissal of his claims as to those defendants. With respect to JCMM, Plaintiff ultimately settled his claims.

prima facia case of personal jurisdiction, we "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233 (alteration in original omitted) (internal quotation marks and citation omitted).

## DISCUSSION

### *General Principles of Personal Jurisdiction*

"[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting FED. R. CIV. P. 4(k)(1)(A)).  Thus, in a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant if "the forum state's long-arm statute extends to [such] defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019).  Since "the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc.*, 921 F.3d at 530; *see also Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010) ("Our long-arm statute reaches as far as the federal constitutional requirements for due process will allow.  Consequently, the statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations." (internal quotation marks and citations omitted)).

"Because a state court's assertion of jurisdiction exposes defendants to the State's coercive power, it is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause, which limits the power of a state court to render a valid personal judgment against a nonresident defendant." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 137 S. Ct.

1773, 1780 (2017) (alterations in original omitted) (internal quotation marks and citations omitted). To comport with due process demands, a plaintiff in a diversity case must establish that the non-resident defendant "purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state" and that "the exercise of jurisdiction [] does not offend traditional notions of fair play and substantial justice." *Halliburton Energy Servs., Inc.*, 921 F.3d at 530 (internal quotation marks and citations omitted).

Certain types of contacts support a court's exercise of general jurisdiction over a non-resident defendant, while others support exercise of specific jurisdiction. *Id.* General jurisdiction "requires continuous and systematic forum contacts and allows for jurisdiction over all claims against the defendant, no matter their connection to the forum." *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (internal quotation marks and citation omitted). Specific jurisdiction, on the other hand, demands a connection between the suit and the forum. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. On appeal, as below, Plaintiff makes no arguments as to general jurisdiction, only urging that specific jurisdiction exists as to Magna. Plaintiff further limits his argument to the applicability of the stream-of-commerce theory, which is discussed below. Thus, our focus is also so-limited.

### Specific Jurisdiction

Whether specific jurisdiction can be properly asserted over a non-resident defendant is dependent on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (internal quotation marks and citation omitted). For the exercise of specific jurisdiction to comply with due process, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780

(alternations in original omitted) (internal quotation marks and citation omitted). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (alteration in original omitted) (internal quotation marks and citation omitted). Such activity or occurrence must "create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Absent this connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781. "[A] defendant's general connections with the forum are not enough." *Id.* Consistent with these principles, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* at 1780 (internal quotation marks and citation omitted).

Considering the foregoing precepts, in determining whether due process allows the exercise of specific jurisdiction, this court applies the following three-factor test:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona*, 924 F.3d at 193 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Notably, with respect to the minimum-contacts inquiry (our factor 1), the Supreme Court has stressed that, because due process limits states' judicial authority in order to protect the liberty of non-resident defendants, significant contacts are those that "the defendant *himself* creates with the forum State."

*Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)); *see also Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779 ("The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State.")  Thus, while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," the "defendant-focused 'minimum contacts' inquiry" cannot be satisfied by merely demonstrating contacts between the plaintiff or a third party and the forum state.  *Walden*, 571 U.S. at 284, 286.

If the plaintiff demonstrates satisfaction of the first two factors with respect to each of his claims, then the burden shifts to the non-resident defendant to show, under the third factor, "that exercising jurisdiction would be unfair or unreasonable."  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).

### *Stream-of-Commerce Theory*

In the context of products-liability cases, like the case presently before us, an analysis involving a stream-of-commerce metaphor is often employed to assess whether the non-resident defendant has minimum contacts with the forum (our factor 1).[4]  As the Supreme Court has explained, courts use the metaphor to allow for jurisdiction where "the product has traveled through an

---

[4] The modern jurisdictional stream-of-commerce concept stems from *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980), where the Supreme Court stated:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the ***stream of commerce*** with the expectation that they will be purchased by consumers in the forum State.

*Id.*

extensive chain of distribution before reaching the ultimate consumer." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 926 (2011) (internal quotation marks and citation omitted). The stream-of-commerce doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby [] subject itself to personal jurisdiction—by sending its goods rather than its agents into the forum." *In re: Depuy Orthopaedics, Inc.*, 888 F.3d at 753.

The Fifth Circuit has found this doctrine and thus minimum contacts satisfied so long as the court determines "that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir.1987)). In other words, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Id.* (quoting *Luv N' care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 470 (5th Cir.2006)); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.,* 9 F.3d 415, 419 (5th Cir. 1993). But, "[t]he defendant's contacts [with the forum state] must be more than 'random, fortuitous, or attenuated, or [the result] of the unilateral activity of another party or third person.'" *ITL Int'l, Inc. v. Constenla, S.A.,* 669 F.3d 493, 498 (5th Cir. 2012)).

In *Ainsworth,* we reaffirmed the validity of our stream-of-commerce test despite the Supreme Court's interjection on the topic in *McIntyre,* a fractured opinion which did not produce a majority.[5] *Ainsworth,* 716 F.3d at 178 (citing

---

[5] The facts of *McIntyre* are straightforward: the plaintiff was injured by a machine, which was produced by a manufacturer in England and sold to a national distributer who sold that machine—and no others—to New Jersey. 563 U.S. at 878. The New Jersey Supreme Court found that New Jersey could exert personal jurisdiction over the English manufacturer under its stream of commerce theory. *Id.* The Supreme Court reversed. *Id.*

*J. McIntyre Machinery, Ltd. v. Nicastro*, 563 U.S. 873 (2011)).  We recognized that our test, "in not requiring that the defendant target the forum, was in tension with the plurality opinion" of Justice Kennedy,[6] which would "permit[] the exercise of jurisdiction only where the defendant can be said to have targeted the forum."  *Id.* (citing *McIntyre*, 563 U.S. at 882 (Kennedy, J.)).  But that opinion was not, we explained, controlling.[7]  *Id.*  Rather, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."  *Id.* (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).  Accordingly, we held that it was Justice Breyer's concurring opinion that "furnished the narrowest grounds for the decision" and was controlling.  *Id.*  And, because Justice Breyer simply applied existing Supreme Court precedent to the specific facts presented in that case, our pre-*McIntyre* stream-of-commerce holdings were not abrogated.  *Id.*

Yet, we also acknowledged that Justice Breyer's concurrence illuminated the outer limits of our "foreseeability" test.  *Id.* at 178-79.  He criticized New Jersey's test for personal jurisdiction, which would subject a foreign defendant to jurisdiction so long as it "knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states."  *McIntyre*, 563 U.S. at 891.  Justice Breyer cautioned against such a test that would "rest jurisdiction… upon no more than the occurrence of a product-based accident in the forum State" and "permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in

---

[6] Justice Kennedy was joined by Justices Roberts, Scalia, and Thomas.

[7] A principal more recently reiterated in *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 549 (5th Cir. 2014)("Our stream-of-commerce test, in not requiring that the defendant target the forum, is in tension with [*McIntyre*'s ] plurality opinion.")

the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue." *Id.*

Nonetheless, in *Ainsworth,* we found it unnecessary to "call upon such a broad power" for Mississippi to exercise jurisdiction over the foreign manufacturer, Moffett. 716 F.3d at 179. Instead, we determined that Moffett's 203 forklift sales in Mississippi over ten years, which constituted 1.55% of its United States sales, soundly established sufficient minimum contacts to vest that authority in Mississippi. *Id.* This was true notwithstanding that Moffett lacked actual knowledge of those sales because Mississippi was the fourth largest poultry-producing state in the country, and Moffett's forklifts were designed for poultry-related uses. *Id.* Thus, Moffett could have reasonably expected that such sales would be made and that it could also be haled into court in Mississippi. *Id.*

## *Analysis*

Keeping these principles in mind, we now turn to whether Magna could have reasonably expected that its product would be sold or used in Texas.[8] In

---

[8] Magna argues that we should apply the "stream-of-commerce-plus" test used by Texas courts over our own stream-of-commerce approach if we determine that the two would produce different results. Because we conclude that the district court lacks personal jurisdiction over Magna under this court's application of the stream-of-commerce doctrine, which Magna contends is less stringent than Texas', we need not resolve the merits of Magna's argument. We point out, however, that both the Texas Supreme Court and this court have recognized that Texas' long-arm statute extends to the limits of federal due process. *See Halliburton Energy Servs., Inc.*, 921 F.3d at 530; *Spir Star AG*, 310 S.W.3d at 872 ("Our long-arm statute reaches as far as the federal constitutional requirements for due process will allow. Consequently, the statute's requirements are satisfied if exercising jurisdiction comports with federal due process limitations." (internal quotation marks and citations omitted)). Thus, when a Texas court interprets and applies the stream-of-commerce theory to determine whether a non-resident defendant has sufficient minimum contacts with Texas to allow for the exercise of personal jurisdiction, it engages in a federal due process analysis—not an interpretation of the Texas long-arm statute. Magna provides no authority as to why this court should give Texas courts' interpretation of the requirements of federal due process precedence over our own. Accordingly, without expressly deciding, we note that Magna's argument appears to lack merit.

arguing affirmatively, Zoch proffered evidence that Magna knew it was supplying seats for more than 130,000 Smart Fortwo vehicles destined to be sold in the United States; its contract with Damlier required unique designs to meet safety standards specific to the United States; and, Magna did not attempt to geographically limit where the cars and, in turn, its seats would be sold.  Zoch contends that the foregoing facts, along with the facts that Texas is one of the largest and most populated states; that Texas has one of the largest American motor vehicle markets in terms of licensed drivers and registered vehicles; and that four Smart Fortwo dealerships were opened in Texas, demonstrate that Magna must have known, and even intended, that its 2008 Smart Fortwo drivers seats would be sold and used in Texas.

But this evidence demonstrates only that Magna, a German company, manufactured, sold, and supplied vehicle seats for 2008 Smart Fortwos to Daimler's assembly plant in France, knowing that those seats would be placed in vehicles ultimately destined for the *United States* generally, not *Texas* specifically.  Importantly, Plaintiff has not provided, and conceded at oral argument that he does not have, any evidence that Magna was aware that any of its seats manufactured for the 2008 Smart Fortwo would likely end up in Texas.  Such attenuated activity and scarce knowledge by Magna cannot be said to have "create[d] a substantial connection with the forum State [of Texas]." *Walden*, 571 U.S. at 284.

While jurisdiction does not rely on a finding that Magna targeted Texas, there must be some proof that it placed its product "into the stream of commerce with the expectation that it would be purchased by or used by consumers *in the forum state*." *Ainsworth*,716 F.3d at177 (emphasis added). Zoch's evidence regarding the number of registered drivers and vehicles in Texas is insufficient to conclude that Magna "should [have] reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen Corp.*, 444

U.S. at 297.  This is because there are drivers and vehicles in each of the fifty states,[9] and Zoch's evidence, at most, proves only that its contract with Damlier "*might* lead to those products being sold in any of the fifty states."  *McIntyre*, 564 U.S. at 890–91 (Breyer, J.) (internal quotation marks and citation omitted).  Thus, this case is unlike *Ainsworth,* where the forum state was unique in its poultry production—a form of commerce, unlike the automobile industry, that is not immensely prevalent among citizens of each of the fifty states.  *Ainsworth,*716 F.3d at177.

But this case is distinct from *Ainsworth* in other important respects as well.  First, Zoch presented no evidence as to the number of 2008 Smart Fortwos actually sold in Texas or income generated from those Texas sales from which we could perhaps infer Magna's knowledge of the likely number of its seats that would end up in that state.  And, without these numbers, we can only speculate whether Magna's contacts with Texas more closely resemble *McIntyre*'s single metal sheering machine found in New Jersey or *Ainsworth*'s two hundred forklifts found in Mississippi.[10]  Only the latter would make a strong case for jurisdiction.  Second, unlike the manufacturer in *Ainsworth,* Magna did not have an exclusive sales contract with the distributor and did not have control over or delegate control over the sales or marketing of the *final* product.  *Id.* at 177 (The foreign defendant "was aware that[, pursuant to

---

[9] Zoch makes much of the fact that there are four Smart Fortwo dealerships in Texas. But because there is no evidence that Magna was aware of these dealerships, we are not convinced that their existence alone makes it more reasonable for Magna to expect its seats to be sold in Texas.  And, other than because Texas has the second most registered drivers in the United States, Zoch offers no additional reasons why Magna would reasonably expect Damlier to have four dealerships in Texas.  Thus, Zoch's two arguments—that Texas has the second most drivers and that Texas has the second most dealerships—collapse in on each other.

[10] It may be reasonable to assume, due to the four dealerships in Texas, that more than one Smart Fortwo was sold there.  However, Zoch bears the burden of proof on the first two elements of jurisdiction, so we are reluctant to assume that enough Smart Fortwos were sold in Texas to, like *Ainsworth,* find minimum contacts satisfied on this basis.

the exclusive sales and distribution agreement, the distributor] marketed its product throughout the entire United States"). Rather, Magna provided a component part of the product to a manufacturer, Damlier, who then controlled these aspects.[11] We therefore lack the type of conclusive evidence the court in *Ainsworth* relied on in finding that the manufacturer had minimum contacts with the forum state.

Finally, we note that Zoch's argument, at its core, relies on the fact that Texas—by virtue of it being a populous state—commands a large portion of the automobile market. Permitting jurisdiction in this instance, without more than the facts in this record, would essentially confer jurisdiction to any state with a large population where a manufacturer sells its products to a national distributor. Justice Breyer's *McIntyre* concurrence cautioned against these types of broad sweeping jurisdictional tests and advised considering additional limiting factors in these circumstances, i.e., the number of products in the forum state, the size of the manufacturer, and its proximity to the forum. *McIntyre*, 563 U.S. at 891. And, again, Zoch failed to produce any concrete evidence of the number of Smart Fortwos in Texas or of Magna's size; but we do know that Magna is domiciled far from the forum state in Germany. Therefore, Justice Breyer's additional limitations further suggest that jurisdiction is improper in Texas.

We emphasize that our holding in this case—that application of the stream-of-commerce theory does not result in a finding of minimum contacts—is limited to the specific facts of this case. We make no broad pronouncements with respect to the stream-of-commerce theory; and our

---

[11] In assessing Magna's contacts (or lack thereof) with Texas, we will not impute any conduct or knowledge of Daimler, Smart USA Distributor LLC, or any other entity to Magna, since the "defendant-focused 'minimum contacts' inquiry" cannot be satisfied by merely demonstrating contacts between . . . a third party and the forum state. *Walden*, 571 U.S. at 284, 286.

decision should not be read as prohibiting the exercise of specific jurisdiction over all component parts manufacturers. Specific jurisdiction should be determined on a case-by-case basis under the facts of each individual case.

Because we conclude that Plaintiff did not establish minimum contacts with Texas and, therefore, did not satisfy the first prong of this court's three-factor test for specific jurisdiction, we need not address the second and third prongs of our test—whether Plaintiff's claims arises out of Magna's contacts with Texas and whether exercising jurisdiction over Magna would be fair and reasonable. *See Carmona*, 924 F.3d at 193.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.