# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00453-CV

---

**Volkswagen Aktiengesellschaft, Appellant**

**v.**

**The State of Texas and Travis County, Texas, Appellees**

---

### NO. 03-20-00022-CV

---

**Audi Aktiengesellschaft, Appellant**

**v.**

**State of Texas and Travis County, Appellees**

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-16-000370, THE HONORABLE TIM SULAK, JUDGE PRESIDING**

---

## DISSENTING OPINION

VW Germany and Audi Germany installed defeat-device software to evade compliance with state and federal emissions standards in cars that they manufactured in Germany for sale in the United States, including Texas. After vehicles equipped with the defeat-device software developed hardware failures, VW Germany and Audi Germany provided updated "tampering" software to VW America to correct the hardware problems on their

vehicles in order to continue to evade compliance with emissions laws. VW Germany and Audi Germany directed VW America to install the new tampering software by conducting a series of voluntary recall campaigns and by also installing the software on vehicles brought in for regular maintenance. Ultimately, the software was installed on 23,319 Volkswagens at 60 Volkswagen dealerships in Texas and at least 486 Audis at 12 Audi dealerships in Texas. The Court has concluded that VW Germany and Audi Germany lack the requisite minimum contacts with Texas required for Texas courts to exercise jurisdiction over them because these "recall-tampering activities" were directed to the United States as a whole and so could not be purposefully directed to Texas. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) ("[A] state court can exercise jurisdiction over a nonresident defendant only if (1) the defendant has established 'minimum contacts' with the state and (2) the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))); *see also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) ("A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))). Because I cannot agree with this conclusion, I dissent.

Instead, I would conclude that VW Germany and Audi Germany cannot evade personal jurisdiction in Texas merely because the recall-tampering activities, which they controlled, were directed to the United States instead of solely to Texas. By directing those activities to the United States as a whole, they necessarily directed those activities to Texas, a state where they required VW America to install software on thousands of vehicles. To hold

2

otherwise is to hold that by targeting every state, a foreign manufacturer is not accountable in any state.

**I.  VW Germany and Audi Germany purposefully availed themselves of the United States market as a whole, and the Texas market in particular, thus establishing minimum contacts with Texas**

When a court conducts a minimum-contacts analysis to determine whether a defendant has purposefully availed itself of the privilege of conducting activities within that state, "[t]he defendant's activities, whether they consist of direct acts within Texas *or conduct outside Texas*, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Retamco*, 278 S.W.3d at 338 (emphasis added) (quoting *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002)). Specific jurisdiction arises when (1) the defendants' contacts with the forum state are purposeful, and (2) the cause of action arises from or relates to the defendants' contacts. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). "A court has specific jurisdiction over a defendant if its alleged liability arises from or is related to an activity conducted within the forum." *Id.* In this case, I would conclude that the alleged liability of VW Germany and Audi Germany arises from the purposeful recall-tampering activities that they controlled by directing VW Germany's wholly owned subsidiary VW America to install the tampering software in Texas and elsewhere.[1]

"Purposeful availment" is "the touchstone of jurisdictional due process," and in my view, the recall-tampering conduct of VW Germany and Audi Germany satisfies the three guiding principles for finding that defendants have purposefully availed themselves of a forum.

---

[1] As noted in the Court's opinion, Audi Germany is a subsidiary owned by VW Germany.

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784-85 (Tex. 2005). First, VW Germany and Audi Germany directed VW America's contacts with Texas—both the initial acts of marketing and sales of affected vehicles in Texas and the later suit-specific recall-tampering activities. Those indirect contacts by VW Germany and Audi Germany with Texas through VW America are not solely "the result of . . . the 'unilateral activity of another party or a third person.'" *Id.* at 785 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the recall-tampering activities were "purposeful" contacts with Texas residents, not "random, isolated or fortuitous." *Id.* (explaining that "[s]ellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities" (quoting *Burger King*, 417 U.S. at 473)). Third, VW Germany and Audi Germany undeniably profited by availing themselves of the Texas market, albeit indirectly through their relationships with VW America and its franchise dealerships, relationships that VW Germany and Audi Germany controlled through the Importer Agreements. *Id.*; *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007) ("In determining whether the defendant purposefully directed action toward Texas, we may look to conduct beyond the particular business transaction at issue . . . .").

The Court's opinion acknowledges that "the evidence in the record establishes that VW Germany [and Audi Germany] directed [their] recall-tampering conduct towards the United States as a whole," but it concludes that the conduct is insufficient to establish specific jurisdiction over them because the conduct was not directed "to Texas specifically." Slip op. at 11, 17. The Court's opinion adopts the reasoning in the United States Supreme Court's plurality opinion in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), and concludes that absent evidence in the record that VW Germany and Audi Germany directed their conduct

4

specifically toward Texas, as opposed to the United States market as a whole, the recall-tampering conduct does not satisfy the purposeful-availment test. However, the *Nicastro* "plurality opinion does not speak for the Court," as the dissenting opinion pointed out. *See id.* at 910 (Ginsburg, J., dissenting). And the Texas Supreme Court has not adopted its reasoning in any case with a fact pattern similar to this one involving foreign manufacturers who "exclude[] no region or State from the market they wish[] to reach," *see id.* at 893, and who directed their conduct toward the United States market as a whole, including Texas.[2] I would not adopt the *Nicastro* plurality's reasoning in this case; instead, for the reasons explained below, I would conclude that under established jurisprudence, the State has shown that VW Germany and Audi Germany have purposefully availed themselves of the benefits of the Texas market and are therefore subject to the jurisdiction of Texas courts.[3] Accordingly, I would affirm the trial court's orders denying their special appearances.

---

[2] The only two Texas Supreme Court cases that cite *Nicastro* did not involve jurisdictional facts similar to the ones here. *See generally TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016); *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016). In *TV Azteca*, the supreme court considered whether Texas courts could exercise jurisdiction in a defamation suit over "Mexican citizens who broadcast television programs on over-the-air signals that originate in Mexico but travel into parts of Texas." 490 S.W.3d at 34. In *Searcy*, the supreme court considered whether Texas courts could exercise jurisdiction in a suit arising out of a failed business transaction in which a Texas entity sued a Canadian entity and a Bermudian shareholder for tortious interference with a share purchase agreement and sued a Bermudian owner of Colombian oil-and-gas operations for fraud. 496 S.W.3d at 62. Neither case involved jurisdictional allegations against an entity that targeted its activities toward all states, or even multiple states.

[3] The Fifth Circuit has explained that "[c]ircuit courts interpreting *McIntyre* have concluded that under *Marks v. United States*, 430 U.S. 188, 193 (1977), Justice Breyer's concurring opinion 'furnished the narrowest grounds for the decision and controls.' . . . [T]he narrowest ground, as expressed in Justice Breyer's concurrence, is that the law remains the same after *McIntyre*, and that circuit courts may continue to attempt to reconcile the Supreme Court's competing articulations of the stream of commerce test." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 541 (5th Cir. 2014) (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 178 (5th Cir. 2013)).

The crux of my disagreement with the Court's analysis is that it concludes that the State has failed to establish that VW Germany and Audi Germany engaged in conduct purposefully directed at Texas because that conduct was directed to the United States as a whole. The Court's opinion also concludes that some of the recall-tampering activities relied on by the State are more properly characterized as the activities of VW America, not VW Germany or Audi Germany. Although the Court's opinion acknowledges that a nonresident's purposeful availment of a local market may be indirect—"through affiliates or independent distributors"—*Spir Star AG*, 310 S.W.3d at 874, and that VW Germany and Audi Germany retained a significant degree of control over the recall-tampering activities carried out by VW America, the Court does not find persuasive the State's argument that VW Germany and Audi Germany indirectly purposefully availed themselves of Texas by directing VW America to carry out the recall-tampering activities on their behalf in Texas. I do.

The Court's opinion characterizes the following activities as only VW America's activities:

- the sale of affected vehicles to VW America franchise dealers in the United States, including franchise dealers in Texas;

- the sale by VW America franchise dealers of those vehicles to customers in the United States, including customers in Texas;

- the distribution of the technical description of the recalls to VW America technicians and customers in the United States, including technicians and customers in Texas;

- the distribution of the software updates to VW America franchise dealerships in the United States, including franchise dealerships in Texas;

- the installation by VW America franchise dealerships of the software updates on vehicles in the United States, including 23,319 Volkswagens at 60 Texas Volkswagen dealerships and at least 486 Audis at 12 Texas Audi dealerships; and

6

- the reimbursement of the VW America dealers nationwide for the costs of the recall.

However, under the Importer Agreements between VW Germany and VW America and between Audi Germany and VW America, which govern the relationship between each set of entities throughout the United States as a whole, VW Germany and Audi Germany retained a significant degree of control over the recall-tampering activities in Texas and elsewhere. VW Germany developed the tampering software for Volkswagen vehicles in the United States, deliberately designing it to evade state and federal emissions regulations, and Audi Germany tested it for compatibility with Audi vehicles. They both directed VW America to notify its authorized Volkswagen and Audi dealers and customers in the United States, including those in Texas, about the software updates using messaging they approved. They both electronically distributed the tampering software to VW America for installation on vehicles in the United States, including in Texas. They both directed VW America to install the tampering software on vehicles in the United States, including in Texas. They each reimbursed VW America for the costs of implementing the recall, with VW Germany reimbursing VW America $1,233,609 for its reimbursements to Texas dealers and Audi Germany reimbursing VW America $29,590 for its reimbursements to Texas dealers.

I agree that VW America's contacts and its franchise dealers' contacts cannot be attributed to VW Germany and Audi Germany as direct contacts with Texas, but in my view, the evidence supporting the German entities' control of the recall-tampering conduct directed at Texas establishes purposeful availment carried out indirectly through VW America and its franchise dealers. VW Germany and Audi Germany, through VW America and its franchise dealers, marketed and sold the affected vehicles to Texas residents on a large scale. They

7

subsequently carried out the recall-tampering activities on the same large scale, knowing that affected vehicles had been sold and were located in Texas and tracking the progress of the recalls. Moreover, the electronic delivery of the software to VW America for installation on vehicles in Texas is a physical entry into Texas that I consider to be a relevant jurisdictional contact with the forum. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail or some other means—is certainly a relevant contact."); *see also Burger King*, 471 U.S. at 476 (explaining that "an absence of physical contacts" will not defeat personal jurisdiction if nonresident "commercial actor's efforts are 'purposefully directed' toward" forum). The quality and nature of this contact with Texas—the delivery of software designed to allow Volkswagen- and Audi-branded vehicles to evade Texas regulations—further persuades me that VW Germany and Audi Germany, through VW Germany's wholly owned subsidiary VW America, purposefully availed themselves of the privilege of conducting activities in Texas.

This deliberate conduct goes beyond "[m]ere knowledge that the 'brunt' of the alleged harm would be felt—or have effects—in the forum state." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 68 (Tex. 2016). The recall-tampering conduct was deliberate activity designed by VW Germany and Audi Germany specifically to evade Texas's emission regulations (as well as those of other states and the federal government) after directing VW America to exhaust all United States market opportunities for Volkswagen- and Audi-branded vehicles. While it is true that "a defendant may structure its transactions in such a way as 'neither to profit from the forum's laws nor subject itself to jurisdiction' there," i.e., to "purposefully avoid" jurisdiction, *id.* (quoting *Michiana*, 168 S.W.3d at 785), I would not conclude that a nonresident may purposefully avoid a particular jurisdiction merely by conducting activities directed at every state

8

in the United States, and by avoiding any special treatment of one state or a few states. On the record before the Court, I would conclude that the State has established that, by engaging in the recall-tampering activities, VW Germany and Audi Germany have purposefully availed themselves "'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana*, 168 S.W.3d at 784 (quoting *Hanson*, 357 U.S. at 253).

## II. Asserting jurisdiction over VW Germany and Audi Germany comports with traditional notions of fair play and substantial justice

Because I would conclude that VW Germany's and Audi Germany's Texas contacts support specific jurisdiction, I must also determine whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice. *See Spir Star AG*, 310 S.W.3d at 878. "Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 232 (Tex. 1991) (citing *Burger King*, 471 U.S. at 477). To evaluate this component, appellate courts consider the defendants' contacts in light of the following factors: (1) "the burden on the defendant"; (2) "the interests of the forum state in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies. *Spir Star AG*, 310 S.W.3d at 878 (citing *Guardian Royal*, 815 S.W.2d at 231).

9

Generally speaking, "[w]hen a nonresident defendant has purposefully availed itself of the privilege of conducting business in a foreign jurisdiction, it is both fair and just to subject that defendant to the authority of that forum's courts." *Id.* at 872 (citing *Burger King*, 471 U.S. at 475). When a defendant that has directed its activities at a forum seeks to defeat jurisdiction, it "'must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Guardian Royal*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 475 (emphasis added in *Guardian Royal*)). Distance alone will not ordinarily defeat jurisdiction. *Guardian Royal*, 815 S.W.2d at 231. "[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Id.* (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222 (1957)).

Here, Texas has a strong interest in adjudicating this dispute in which the State alleges that VW Germany's and Audi Germany's tampering scheme violated Texas law. "[A] state's regulatory interest in a certain area . . . is an important consideration in deciding whether the exercise of jurisdiction is reasonable." *Id.* at 229. While a state's regulatory interest alone is not sufficient to establish jurisdiction, "a state's regulatory interest may establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* In addition, the State argues that its interest in obtaining convenient and effective relief is implicated because VW America claims that it had no knowledge of the tampering efforts. It will be more efficient to adjudicate the entire case in the same place, and the State's case against the other defendants will be heard in Texas. *See Spir Star AG*, 310 S.W.3d at 879. While I recognize "the unique and onerous burden placed on a party called to defend a suit in a foreign legal system," *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)

10

(citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987)), that burden is minimal in this case and outweighed by the State's interest in adjudicating the case in Texas, *see Spir Star AG*, 310 S.W.3d at 879-80. Accordingly, I would conclude that asserting personal jurisdiction over VW Germany and Audi Germany comports with traditional notions of fair play and substantial justice.

## CONCLUSION

For the reasons stated, I would hold VW Germany and Audi Germany answerable in Texas for their recall-tampering activities that were purposefully directed to the United States market as a whole, including to Texas.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Filed: December 22, 2020

11